# FARMER v. ARABIAN AMERICAN OIL CO.

No. 32. Argued November 9–10, 1964.—
Decided December 14, 1964.*

---

*Together with No. 33, *Arabian American Oil Co.* v. *Farmer,* also on certiorari to the same court.

228

*Kalman I. Nulman* argued the cause for petitioner in No. 32 and respondent in No. 33. With him on the briefs was *William V. Homans.*

*Chester Bordeau* argued the cause for respondent in No. 32 and petitioner in No. 33. With him on the briefs were *Lowell Wadmond, William L. Owen* and *Thomas F. Barry.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The questions presented in this case relate to the power and discretion of a United States district court to tax as costs against the loser in a civil lawsuit expenses incurred by the winner in carrying on the litigation.

Howard Farmer, a physician from Texas specializing in ophthalmology, started this litigation against the Arabian American Oil Company in a New York state court, claiming $4,000 damages [1] for breach of an employment contract. The complaint alleged that in April 1955 the company entered into an agreement to employ Farmer as an ophthalmologist in Saudi Arabia at an annual salary of $16,000 plus a $4,000 living allowance per year, so long as the company continued its oil-well operations there, and that although he began work and properly performed his duties, the company wrongfully discharged him in March 1956. On the company's motion the case was removed to federal court because of diversity. The company admitted that it had employed Farmer but defended on the grounds that the discharge was not wrongful both because he had been employed at will rather than for a definite term, and because he had been discharged for good cause. At the trial Farmer attempted to show that the company discharged him because he had

---

[1] By two successive amendments made several years later, the complaint was amended to claim, first, $59,683, and finally, $160,000.

found that a number of Americans employed by the company in Arabia had contracted trachoma, a much dreaded tropical eye disease which may lead to blindness, and that although urged by the company's medical staff to falsify or suppress his findings, he had refused to do so. The company's evidence tended to disprove this charge and to show that Farmer had been discharged because he had operated on a young Arabian boy's eye, without first having received and examined a urinalysis and blood test report. This the company alleged to be in violation of a written company rule and standard surgical practice. Such tests had in fact been completed before Dr. Farmer performed the operation, but whether he had known of the tests or their results, and whether there actually had been a company rule requiring that he have the test results were in sharp dispute.

The company, in order to refute Farmer's charge, brought three witnesses from Saudi Arabia to New York to testify in support of its version of the dispute. The jury failed to agree, after which District Judge Palmieri granted the company's motion for a directed verdict, 176 F. Supp. 45, and approved the clerk's taxation of costs against Farmer in the amount of $6,601.08, which included among other things transportation expenses for the witnesses from Arabia and costs of daily stenographic transcripts of the trial record furnished to the company's lawyers at their request. Holding that a verdict should not have been directed, the Court of Appeals reversed and remanded the case for a new trial, thereby upsetting the judgment and the taxation of costs. 277 F. 2d 46.

On remand to the District Court the company obtained an order directing Farmer to put up security for costs in the sum of $6,000. Because Farmer was unable to post so large a bond, Judge MacMahon dismissed the case. The Court of Appeals reversed in an opinion that strongly

indicated its belief that the costs already taxed were exorbitant and that to require Farmer to give the bond would "for all practical purposes" deny him his day in court. 285 F. 2d 720. On a second trial, this time before District Judge Weinfeld, the jury found for the company and no appeal was taken. The clerk then taxed $11,900.12 against Farmer as the aggregate cost of both trials, but on review Judge Weinfeld found these costs "staggering" for so uncomplicated a case and reduced them to $831.60. In making this reduction, Judge Weinfeld lowered the cost bill approved by Judge Palmieri in the first trial from $6,601.08 to $496.05. He did this chiefly by eliminating the transportation expenses of the witnesses from Arabia and the costs of supplying the company's counsel with overnight transcripts of the daily trial proceedings. Judge Weinfeld also refused to require Farmer to reimburse the company for its similar expenses in the second trial. 31 F. R. D. 191. Sitting *en banc,* the Court of Appeals, by a vote of 5–4, affirmed Judge Weinfeld's cost taxation for the second trial, but held that he had failed to give proper deference to Judge Palmieri's taxation of costs for the first trial and so reversed that part of his order. The Court of Appeals itself, however, directed that Judge Palmieri's cost allowance be reduced by $2,064 for transportation of two of the witnesses from Arabia, who had "occupied otherwise empty space in company planes on regularly scheduled flights to and from Saudi Arabia, so that as to them there was no actual travel expense incurred by the company and none should have been allowed." 324 F. 2d 359, 364.

Farmer petitioned for certiorari to review the Court of Appeals' refusal to affirm Judge Weinfeld's taxation of costs. The company sought certiorari to review those parts of the Court of Appeals' judgment refusing to allow all costs taxed by Judge Palmieri on the first trial and

refusing to allow transportation costs incurred in transporting its witnesses from Arabia for the second trial. We granted both petitions, 376 U. S. 942. For reasons to be stated, which are not wholly the grounds relied on by Farmer, we agree with him that Judge Weinfeld's order should have been upheld in its entirety.

## I.

We deal first with Farmer's contention that the District Court was wholly without power to tax costs against him to reimburse the company for expenses incurred in bringing the witnesses from Arabia to this country. His argument runs this way. It has long been the law in this country, as now set out in Rule 45 (e) of the Federal Rules of Civil Procedure,[2] that, with exceptions not here relevant, subpoenas requiring the attendance of witnesses at a trial cannot be served outside the judicial district more than 100 miles from the place of trial. Many decisions of district courts and courts of appeals have held that since witnesses cannot be compelled under this rule to travel more than 100 miles, a party who persuades them to do so by paying their transportation expenses cannot have those expenses taxed as costs against his adversary.[3] This was the view of three of the dissenting judges below. 324 F. 2d 359, 365. The majority, however, while recognizing that the great bulk of judicial authority supports the 100-mile rule, neverthe-

---

[2] Rule 45 (e) provides in part that:

"A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the district, or at any place without the district that is within 100 miles of the place of the hearing or trial specified in the subpoena . . . ."

[3] See cases cited in the opinion of the court below, 324 F. 2d, at 362, and the dissent, 324 F. 2d, at 366, as well as cases collected in 28 U. S. C. A. § 1821, n. 4, and 28 Fed. Code Ann. § 1821.

less held that district courts do have discretionary power to tax such costs under 28 U. S. C. § 1920 (3) (1958 ed.), which provides that "[a] judge or clerk . . . may tax as costs . . . [f]ees and disbursements for . . . witnesses . . . ." The majority also thought the prior 100-mile rule had been undercut by the 1949 congressional amendment to 28 U. S. C. § 1821 (1958 ed.), which provides that "witnesses who are required to travel . . . to and from the continental United States, shall be entitled to the actual expenses of travel . . . ."

We cannot accept either the extreme position of the company that the old 100-mile rule has no vitality for any purpose or Farmer's argument that a federal district court can never under any circumstances tax as costs expenses for transporting witnesses more than 100 miles. In this case, however, where taxation of such expenses is being denied, we need not set out the specific circumstances under which such costs can be taxed nor mark precisely the limits of a district court's power to tax them. It is sufficient here to point to Federal Rule of Civil Procedure 54 (d), which provides that "Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." While this Rule could be far more definite as to what "costs shall be allowed," the words "unless the court otherwise directs" quite plainly vest some power in the court to allow some "costs." We therefore hold that Judge Weinfeld was correct in treating this case as an appeal to his discretion.

## II.

The Court of Appeals held, and the company argues here, that, even if Judge Weinfeld did have discretion, it was nevertheless error for him to undertake "an independent determination *de novo* of the costs allowed at

a prior trial." 324 F. 2d, at 364. We cannot agree. Since Judge Palmieri's judgment and his taxation of costs were both upset by the Court of Appeals' reversal of the first trial judgment, it became the duty of the clerk to tax costs for both trials only when judgment was finally entered for the company. The fact that the clerk accepted Judge Palmieri's former cost taxation put no duty on Judge Weinfeld to accept the same figures. On review of the clerk's assessment, it was Judge Weinfeld's responsibility to decide the cost question himself, and so far as an exercise of discretion was called for, it was then *his* discretion and not Judge Palmieri's that had to control. True, any judge in a like situation would almost surely hope to agree with his brother judge's prior opinion, but we cannot accept the idea that he is compelled to do so. Judge Weinfeld was aware of intervening circumstances of which Judge Palmieri could not have known, as for example the Court of Appeals' two opinions following the first trial, one of which mentioned cost questions. And Judge Weinfeld in lowering the prior assessment reached a result not greatly different from that of the Court of Appeals, which itself reduced Judge Palmieri's cost allowance more than $2,000.

## III.

Finally, we think that Judge Weinfeld's taxation of costs as to both trials was an appropriate exercise of his discretion and should have been allowed to stand. The two disputed expenses that are most important in principle and largest in amount are (a) approximately $3,000 for stenographers' fees in supplying company counsel with daily transcripts of the trial, and (b) approximately $7,000 for expenses incurred in transporting witnesses from and back to Arabia.

(a) In denying the allowance for daily transcripts, Judge Weinfeld pointed out that while these might have

added to the convenience of counsel for the company, and perhaps even have made the task of the trial judges easier, the transcripts were by no means indispensable. The judge's conclusion was based on his personal knowledge that this was not a complicated or extended trial where lawyers were required to submit briefs and proposed findings. As to the company's argument that the transcript costs were justified because the jury read them, Judge Weinfeld correctly pointed out that the same result could have been accomplished without this expense by following the common practice of calling on the stenographer to read from his notes. We think Judge Weinfeld's refusal to make Farmer pay for these overnight transcripts, which were ordered by the company's counsel, was proper and should not have been disturbed by the Court of Appeals.

(b) Judge Weinfeld "in the exercise of discretion" refused to tax the actual transportation expenses of the witnesses from Arabia, limiting those costs to the per diem fees fixed by law and to expenses for travel for a distance not to exceed 100 miles to and from the courthouse. He undoubtedly was influenced to some extent by the long-standing 100-mile rule. That rule, we think, is a proper and necessary consideration in exercising discretion in this field. The century-and-a-half-old special statutory provision [4] relating to service of subpoenas more than 100 miles from the courthouse is designed not only to protect witnesses from the harassment of long, tiresome trips but also, in line with our national policy, to minimize the costs of litigation, which policy is strongly emphasized in the Federal Rules of Civil Procedure.[5] Here the company

---

[4] 1 Stat. 88 (1789); 1 Stat. 335 (1793).

[5] See, e. g., Rule 1 of the Federal Rules of Civil Procedure which provides that all the Rules "shall be construed to secure the just, speedy, and *inexpensive* determination of every action." (Emphasis supplied.)

on its own, without prior notice to the court, brought its foreign witnesses to court at its own expense. With reference to this, Judge Weinfeld said:

> "Upon an appropriate motion, the means of obtaining the testimony of the witness would have rested with the Court which, in its discretion, could have imposed conditions with respect to which party initially was to bear the expense and provided for its ultimate taxation in favor of the prevailing party." 31 F. R. D. 191, 195.

Having failed to bring this problem to the court's attention in any manner, the company went ahead and piled up what Judge Weinfeld quite understandably referred to as this "huge bill of costs." We think that under the circumstances, Judge Weinfeld could not be charged with any improper exercise of the discretion vested in him by Rule 54 (d). We do not read that Rule as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case. Items proposed by winning parties as costs should always be given careful scrutiny. Any other practice would be too great a movement in the direction of some systems of jurisprudence that are willing, if not indeed anxious, to allow litigation costs so high as to discourage litigants from bringing lawsuits, no matter how meritorious they might in good faith believe their claims to be. Therefore, the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute. Such a restrained administration of the Rule is in harmony with our national policy of reducing insofar as possible the burdensome cost of litigation. We therefore hold that Judge Weinfeld's order assessing only appropriate expenses should have been

affirmed by the Court of Appeals. That court's judgment is accordingly reversed and the judgment of the District Court is affirmed. *It is so ordered.*

MR. JUSTICE GOLDBERG, concurring in the result.

I agree with the Court that Judge Weinfeld did not abuse his discretion in limiting the costs for transcripts in both trials. The issues, as Judge Weinfeld properly found, were not extraordinarily complicated nor were the trials of great length, and Judge Weinfeld's decision that much of this expense was not really necessary seems to me entirely correct, let alone not so erroneous as to constitute an abuse of discretion. I likewise agree with the Court that it was Judge Weinfeld's responsibility to decide the cost question and that he was not compelled to agree with Judge Palmieri's prior opinion which was set aside by the Court of Appeals' reversal of the first trial judgment. Also, if I believed that Judge Weinfeld had discretion to tax costs for travel beyond the "100-mile limit," I would agree that he did not abuse his discretion in reducing the travel allowances of the defendant's witnesses to the equivalent of mileage for 100 miles.

But I do not agree that the 100-mile limit is a matter for even the narrow discretion which the Court would allow the lower federal courts to exercise. I would not depart from the strong precedents and long-continued custom that the 100-mile rule is a limitation to be uniformly observed and not to be departed from in taxing costs.

Judges Smith, Clark, and Hays, dissenting in the Court of Appeals on this point, have stated reasons which to me are both persuasive and compelling. Judge Smith succinctly summarized the rationale of the dissenters in stating that the decision of the majority of the Court of Appeals

"not only breaks with the overwhelming weight of authority, and creates a different rule for costs in

civil cases from that in admiralty, but also, as the majority indeed appears to admit, abandons the traditional scheme of costs in American courts to turn in the direction of the English practice of making the unsuccessful litigant pay his opponent's litigation expense as well as his own. It has not been accident that the American litigant must bear his own cost of counsel and other trial expense save for minimal court costs, but a deliberate choice to ensure that access to the courts be not effectively denied those of moderate means." 324 F. 2d 359, 365.

No undue burden is imposed upon a litigant by the American rule, for depositions may be taken of witnesses who live outside the district where a case is pending. If the litigant feels that the personal appearance in court of such a witness is necessary, it is reasonable that he bear the cost involved.

That a discretionary application of the 100-mile rule violates other sound policy is shown by this very case. Two able and experienced District Court Judges applying discretion came to opposite results in the application of the rule; a learned Court of Appeals divided 5 to 4 on this issue. I fear that, in place of the certainty and uniformity of treatment of this important cost item, which has heretofore prevailed throughout the federal system, the opinion of the Court will spawn considerable litigation seeking review of the discretion which the Court now holds is vested in the lower courts. This type of litigation in itself is both time consuming and expensive to the parties and will further add to the burdens of litigation, which even under the traditional 100-mile rule were heavy. Moreover, it will unduly prolong litigation, for appeals over costs may be decided well after a final judgment has been entered.

The fact is that the defendant, in all probability, would not have seriously raised this issue, in light of the uniform

authority against its position, were it not for the enactment of the proviso added in 1949 to 28 U. S. C. § 1821 (1958 ed.). But, as the dissenting judges demonstrated, this proviso has nothing to do with "the eventual recovery of . . . fees as costs by the prevailing party." 324 F. 2d, at 367. It was enacted at the request of the Attorney General to obtain authority to pay the travel expenses of witnesses at the lowest first-class rate so that their attendance could be obtained without financial sacrifice on their part. S. Rep. No. 187, 81st Cong., 1st Sess. Furthermore, it is doubtful whether this statute applies to foreign travel at all since it seems on its face to be limited to travel between the Territories and possessions of the United States and between the continental United States and its Territories and possessions. Finally, since the word "required" is used in the statute, and since the statute's proponent was the Attorney General, it is susceptible of the interpretation that, even if deemed applicable to witnesses coming from abroad, it is limited to those witnesses who are subject to subpoena in the two situations provided in 28 U. S. C. § 1783 (1958 ed.).[1]

Moreover, Federal Rule of Civil Procedure 54 (d) lends no support to this Court's conclusion. That Rule provides that "Except when express provision therefor is made either in a statute of the United States or in these

_____

[1] 28 U. S. C. § 1783 (a) (1958 ed.) provides:

"(a) A court of the United States may subpoena, for appearance before it, a citizen or resident of the United States who:

"(1) Has been personally notified in a foreign country to appear before a court thereof to testify pursuant to letters rogatory issued by such court of the United States, and who has failed to appear or has failed to answer any question which he would be required to answer were he being examined before such court of the United States; or

"(2) is beyond the jurisdiction of the United States and whose testimony in a criminal proceeding is desired by the Attorney General."

rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." In light of the uniform application of the 100-mile limitation both before and after the adoption of 54 (d), known to those charged with framing and amending the Rules, its reference to "costs" can only be interpreted as referring to those traditional court costs, such as the cost of providing transcripts or travel costs limited by the 100-mile rule, normally awarded to a winning litigant.[2]

For these reasons, I would adhere to the traditional formulation of the rule as set forth by the Ninth Circuit that the "mileage allowable should be that which was traveled *within* the district, *or* actual mileage traveled in and out of the district up to 100 miles, whichever is the greater." *Kemart Corp.* v. *Printing Arts Research Laboratories, Inc.,* 232 F. 2d 897, 904.

Even the narrow decision of the Court today, in the words of Judge Clark, dissenting in this case, "represents an approach to the English system, never accepted by us because of our conviction that it 'favored the wealthy and unduly penalized the losing party.' " 324 F. 2d, at 370.

Judge Learned Hand once properly observed: "After now some dozen years of experience I must say that as a litigant I should dread a law suit beyond almost anything else short of sickness and death." [3]

I would not intensify that dread.

Mr. Justice Harlan, with whom Mr. Justice Stewart joins, dissenting.

The only possible justification for bringing this case here was to settle the question of whether the 100-mile

---

[2] Authorities on the rules such as Professor Moore approve the 100-mile rule and do not intimate that it departs in any way from the letter or spirit of Rule 54 (d). 6 Moore, Federal Practice, 1362–1363.

[3] Address of Learned Hand, 3 Association of the Bar of the City of New York, Lectures on Legal Topics, 105 (1926).

subpoena rule deprives a district court of power to tax as costs the traveling expenses of witnesses reasonably brought by the prevailing litigant from places beyond that distance. The Court, however, declines to make any precise holding on this question. The scope of the discretion of a district judge acting within his powers, which is the foundation of today's decision, is in my opinion a matter which should be left with the courts of appeals. I would affirm the judgment below for the reasons stated in the opinion of Chief Judge Lumbard for the majority of the Court of Appeals, 324 F. 2d 359.