UNITED STATES of America, Plaintiff,

v.

ARTICLE OF DRUG, etc., Defendant.

No. CIV-2-75-7.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Aug. 2, 1976.

Motion to Require Payment of
Expenses Oct. 21, 1976.

Motion for Review of Costs Dec. 9, 1976.

John L. Bowers, Jr., U.S. Atty., Robert E. Simpson, Asst. U.S. Atty., Knoxville, Tenn., Richard A. Merrill, Chief Counsel and Robert M. Spiller, Jr., Associate Counsel for Enforcement, Food and Drug Administration, Washington, D. C., for plaintiff.

H. R. Silvers, Greeneville, Tenn., Alan H. Kaplan, Washington, D. C., Peters O. Safir, Washington, D. C. and Robert K. DeVries, Green Pond, N. J., for defendant.

## MEMORANDUM

NEESE, District Judge.

This is a civil *in rem* action commenced January 20, 1975 for the condemnation as adulterated of two ingredients and an article of drug into which they were incorporated as "PET–TABS–GEE" while held for

sale after shipment in interstate commerce. It is claimed that these articles are "new animal drugs" which are legally unsafe, since no approved application therefor is in effect. The articles were seized on February 5, 1975 pursuant to the warrant of arrest issued from this Court. Beecham, Inc. intervened as claimant of the seized articles. Trial was to the Court on March 3–4, 1976.

## FINDINGS OF FACT:

1. The articles of drug, "PET–TABS–GEE", found within this district, are articles intended at all pertinent times for use in the cure, mitigation, treatment, or prevention of disease in animals.

2. The articles of drug, "PET–TABS–GEE", were at all pertinent times drugs, not animal feed, but intended for use for animals other than man, the composition of which was and is such that such articles are not recognized generally, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof.

3. The articles of drug, "PET–TABS–GEE", constituted new animal drugs which are unsafe, because there was not at the pertinent times in effect an approval of an application with respect to particular use or intended use thereof.

4. The articles of drug, "PET–TABS–GEE", were adulterated while held for sale after shipment in interstate commerce.

5. There was no administrative determination by the Food and Drug Administration of new animal drug status for the articles of drug, "PET–TABS–GEE", as labeled when seized herein, until about December 4, 1974.

6. The administrative determination of new animal drug status by the Food and Drug Administration for the articles of drug, "PET–TABS–GEE", as labeled when seized herein, was not based upon any evidence of known unsafety or lack of effect of such product as labeled and formulated on the date of such administrative determination.

7. The articles of drug, "PET–TABS–GEE", on October 9, 1962, was not generally recognized, among experts qualified by scientific training and experience to evaluate the safety of animal drugs, as safe for use under the conditions prescribed, recommended, or suggested in the labeling thereof.

## CONCLUSIONS OF LAW

A. " * * * Any article of * * * drug * * * that is adulterated * * * while held for sale * * * after shipment in * * * interstate commerce * * * shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned in any district court of the United States * * * within the jurisdiction of which the article is found. * * *" 21 U.S.C. § 334(a)(1).

B. " * * * The term 'drug' means * * * articles intended for use in the * * * cure, mitigation, treatment, or prevention of disease in * * * animals. * * *" 21 U.S.C. § 321(g)(1)(B).

C. " * * * The term 'new animal drug'. means any drug intended for use for animals other than man, including any drug intended for use in animal feed but not including animal feed—* * * the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof. * * *" 21 U.S.C. § 321(w)(1).

D. "A drug * * * shall be deemed to be adulterated—* * * if it is a new animal drug which is unsafe within the meaning of [21 U.S.C. § 360b(a)(1)]. * * *" 21 U.S.C. § 351(a)(5).

E. " * * * A new animal drug shall, with respect to any particular use or intended use of such drug, be deemed unsafe for

the purposes of [21 U.S.C. § 351(a)(5)] * * * unless—* * * there is in effect an approval of an application filed pursuant to subsection (b) of [21 U.S.C. § 360b] with respect to such use or intended use of such drug. * * *" 21 U.S.C. § 360b(a)(1)(A).

F. The articles of drug, "PET–TABS–GEE", are not exempted by the "grandfather clause" exemption under the provisions of P.L. 90–399, § 108(b)(3).

## DECISION

■ 41,846 bottles of 50 tablets of "PET–TABS–GEE"; 2,682 bottles of 150 tablets of "PET–TABS–GEE"; 1,596 bottles of 30 tablets of "PET–TABS–GEE"; three drums of "PET–TABS–GEE" in the process of manufacturing; and 1,389 grams of diethylstibestrol, seized by the United States marshal of this district within this district on February 5, 1975 hereby are CONDEMNED. The United States attorney of this district will submit forthwith a proposed judgment and order of disposition of such articles.

The costs hereof will be assessed by the clerk of this Court against the claimant Beecham, Inc.

## MOTION TO REQUIRE PAYMENT OF EXPENSES

The plaintiff moved the Court for an order requiring the claimant to pay its reasonable expenses incurred in proving that the articles of drug involved herein were "new animal drugs" within the meaning of 21 U.S.C. § 321(w)(1), which the claimant refused to admit when requested to do so by the plaintiff pursuant to Rule 36(a), Federal Rules of Civil Procedure; Rule 37(c), Federal Rules of Civil Procedure; 21 U.S.C. § 334(e). After trial herein, the Court made a finding of fact that " * * * [t]he articles of drug, "PET–TABS–GEE," constituted new animal drugs * * *" within the meaning of such statute. Memorandum herein of August 2, 1976.

Rule 37(c), Federal Rules of Procedure " * * * requires the Court to award expenses including reasonable attorney's fees to a party whose request for the admission of the truth of any matter under Rule 36 is denied and who thereafter proves the truth of the matter, unless any one of four conditions is found to exist. * * *" *Bradshaw v. Thompson,* C.A. 6th (1972), 454 F.2d 75, 81 [12], certiorari denied (1973), 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131. One such condition is that " * * * the party failing to admit had reasonable ground to believe that he might prevail on the matter. * * *" Rule 37(c)(3), Federal Rules of Civil Procedure. The true test is not whether such party actually prevailed at trial but whether he acted reasonably in believing that he might prevail. Advisory Committee Note to 1970 amendments of Rule 37(c), 48 F.R.D. 538, 541.

■ Whether such articles of drug were "new animal drugs" involved complex issues of both fact and law. Such determination required not only a consideration of the general recognition of safety and effectiveness of such items, but also a legal conclusion as to whether or not such drug was entitled to "the grandfather protection" from the new drug definition of 21 U.S.C. § 321(w)(1) by virtue of Public Law 90–399, § 108(b)(3). As a conclusion of law the Court held that such "grandfather clause" was not applicable hereto. Memorandum herein of August 2, 1976. Under such circumstances, the Court finds that the claimant had reasonable ground to believe that it might prevail on the matter which the plaintiff requested it to admit. Rule 37(c)(3), Federal Rules of Civil procedure.

■ The plaintiff also bases its motion on 21 U.S.C. § 334(e). Such provision provides that " * * * [w]hen a decree of condemnation is entered against the article [of drug], court costs and fees, and storage and other proper expenses, shall be awarded against the person * * * intervening as claimant of the article. * * *" Such statute is not applicable to the type of costs and expenses sought herein, since the government's expenses in proving the aforementioned matter do not fall within its scope of coverage. Expenses of presenting proof at trial do not appear to be either

"court costs and fees" or "storage and other proper expenses" within the meaning of such statute.

It results that the plaintiff's motion hereby is

DENIED.

## MOTION FOR REVIEW OF COSTS

The claimant moved for a review by the Court of the costs herein taxed against it by the clerk on October 14, 1976. Rule 54(d), Federal Rules of Civil Procedure. The plaintiff responded, asserting that such costs were properly taxed.

■ The principal contention of the claimant is that the amount allowed to the plaintiff as costs for witness and subsistence fees herein is limited to those respective amounts established by statute, *viz.*, 28 U.S.C. § 1821. The Congress has provided that " * * * [a] witness shall receive $20 for each day's attendance and for the time necessarily occupied in going to and returning from the same * * * [and] to an additional allowance of $16 per day for expenses of subsistence. * * * " *Idem.*

Although this Court has discretion in the awarding of taxable costs, it " * * * cannot grant an amount larger than that allowed by the applicable statute. * *' " 10 Wright & Miller, Federal Practice and Procedure 227, § 2678. It is limited by the aforementioned statutory provisions, and " * * * additional amounts paid as compensation, or fees, to expert witnesses can-

not be allowed or taxed as costs in cases in the [f]ederal courts. * * * " *Henkel v. Chicago, St. P. M. & O. R. Co.* (1932), 284 U.S. 444, 446, 52 S.Ct. 223, 225, 76 L.Ed. 386, 388 (headnote 2).

" * * * Specific provision as to the amounts payable and taxable as witness fees was made by the Congress * * *. * * * The Congress has dealt with the subject comprehensively and has made no exception of the fees of expert witnesses. Its legislation must be deemed controlling, and excludes the application in the [f]ederal courts of any different [s]tate practice. * * * " *Ibid.*, 284 U.S. at 446–447, 52 S.Ct. at 225, 76 L.Ed. at 388–389. Thus, the plaintiff is entitled to a $20 per-day witness-attendance fee plus $16 per-day subsistence allowance for each such witness who is not an employee of the United States.

■ As to the plaintiff's attempt to tax as costs against the claimant witness fees, etc. for individuals who were present but did not testify at the trial, it is the general rule that " * * * no fee may be taxed for someone who comes to the courthouse but does not testify at the trial, the presumption being that he was not a necessary witness. * * * " 10 Wright & Miller, *supra*, at 230, § 2678. Although such presumption may be rebutted, *idem.*, the explanations offered by the plaintiff are insufficient for such purposes.[1] Accordingly, such claimed costs are improper.

---

1. " * * * The presumption is overcome * * * if it appears that an order of court or other circumstances rendered [the witnesses'] testimony unnecessary. * * * " *Spiritwood Grain Co. v. Northern Pac. Ry. Co.*, C.A.8th (1950), 179 F.2d 338, 344–345[14], [15]. In such case, *idem.*, the trial court directed a verdict for the defendant rendering the testimony of the witnesses of the defendant unnecessary. Similarly, other courts have required a showing by the party claiming such costs that specific developments at the trial made it unnecessary for certain witnesses to be called. See and *cf.: Rowland v. Kitchens*, D.C.Miss. (1974), 63 F.R.D. 385, 387[2] (the losing party conceded on the day of trial the facts to which the witnesses would have testified); *Vorburger v. Central of Georgia Ry. Co.*, D.C.Ala. (1969), 47

F.R.D. 571, 572[1] (the plaintiff's admissions on cross-examination eliminated the need for the defendant's witnesses); *Oakley v. Norfolk & Western Railway Company*, D.C.Va. (1967), 42 F.R.D. 653, 654[1] (the defendant's admission of liability made the testimony of such witnesses as to that issue unnecessary); *Gillam v. A. Shyman, Inc.*, D.C.Alaska (1962), 31 F.R.D. 271, 274[4] (the Court granted the defendant's motion for a dismissal at the close of the plaintiff's proof).

No similar circumstances are presented herein. The plaintiff offered no explanation as to why its non-testifying witnesses were not called at trial. Under such circumstances it is difficult to see why their testimony was necessary, and the aforementioned presumption has not been rebutted.

■ Finally, the claimant contends that the mileage fees for witnesses provided for under 28 U.S.C. § 1821[2] are limited to the mileage incurred within the district and to a radius of 100-miles-travel from the situs of this Court. Although the aforementioned statute provides no such mileage-limitation, it has generally been held " * * * that a witness [can only] receive the statutory amount for a maximum of 100 miles to and from the place of * * * [the] trial. * * * " 10 Wright & Miller, *supra*, at 231, § 2678. Such a rule developed, because " * * * it was reasonable to conclude that mileage fees under [28 U.S.C.] § 1821 were geared to the effective limits of the subpoena;[3] and hence, where the subpoena was subject to the general territorial limits, mileage allowance taxable as costs was [likewise so] limited. * * * " 6 Moore's Federal Practice (2d ed.) 1726, ¶ 54.77[5.–1].

Thus, " * * * [m]any decisions of district courts and courts of appeals have held that since witnesses cannot be compelled under [Rule 45(e), Federal Rules of Civil Procedure,] to travel more than 100 miles, a party who persuades them to do so by paying their transportation expenses cannot have those expenses taxed as costs against his adversary. * * * " *Farmer v. Arabian American Oil Co.* (1964), 379 U.S. 227, 231, 85 S.Ct. 411, 414, 13 L.Ed.2d 248, 252[1]. Under Rule 54(d), *supra*, it is within the discretion of the District Court, however, to determine whether the prevailing party should be allowed the transportation-expenses of its witnesses in excess of the 100-mile limitation. *Ibid.*, 379 U.S. at 232, 85 S.Ct. at 415, 13 L.Ed.2d at 252–253[2]. Nevertheless, " * * * the discretion to allow the costs of bringing witnesses from a point more than 100 miles away from the place of [the trial] and outside the district is not as broad as the discretion conferred upon district judges in many other areas. * * * " *Grogan v. United States,* C.A.6th (1965), 341 F.2d 39, 43[6].

Applying these criteria, the Court is of the opinion that, in the exercise of its limited discretion, the plaintiff should be permitted to tax herein against the claimant its witnesses' mileage expenses in excess of the 100-mile limitation. The Congress has explicitly provided that, in actions, such as this, brought under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., " * * * [s]ubpenas for witnesses who are required to attend a court of the United States, in any district, may run into any other district. * * * " 21 U.S.C. § 337. Thus, the rationale behind any 100-mile limitation does not exist in the present situation.

In *United States v. Arizona Canning Co.,* C.A.10th (1954), 212 F.2d 532, 534[3–7], an in-rem action brought under the aforementioned act, it was held that the trial court was empowered to assess costs for the allowance for travel of two of the plaintiff's witnesses in excess of 100 miles as an incident to the issuance of the subpoenas under 21 U.S.C. § 337. To blindly apply the so-called 100-mile rule herein, would require the Court to ignore the reasons and policy underlying its adoption. This the Court declines to do. Accordingly, the plaintiff may recover such actual mileage of its trial witnesses in excess of 100 miles.[4]

The plaintiff will forthwith submit to the clerk a revised bill of costs in accordance with this opinion.

---

2. " * * * A witness attending in any court of the United States * * * shall receive * * * 10 cents per mile for going from and returning to his place of residence. * * * " 28 U.S.C. § 1821.

3. " * * * A subpoena requiring the attendance of a witness at a * * * trial may be served at any place within the district, or at any place without the district that is within 100 miles of the place of the * * * trial. * * * " Rule 45(e)(1), Federal Rules of Civil Procedure.

4. In *Mount Vernon Company v. Rowe Transfer & Storage Company,* D.C.Tenn. (1962), 36 F.R.D. 263, this Court limited such mileage fees to 100 miles. Such decision, however, was decided prior to *Farmer, supra;* and. furthermore, therein, the Court's subpoena power was limited by the provisions of Rule 45(e)(1), *supra.* Accordingly, such decision is not inapposite herewith.