See also 573 F.Supp. 193.

**ABBOTT LABORATORIES and Abbott Laboratories International Co., Plaintiffs,**

v.

**GRANITE STATE INSURANCE CO., Defendant.**

**No. 80 C 2897.**

United States District Court, N.D. Illinois, E.D.

Nov. 5, 1984.

Judith A. Royal, Lord, Bissell & Brook, Chicago, Ill., for plaintiffs.

John J. Witous, William J. Schaefle, Richard A. Buchanan, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Granite State Insurance Co. ("Granite State") has prevailed in the bench trial of the lawsuit brought by Abbott Laboratories and Abbott Laboratories International Co. (collectively "Abbott") on an all-risks insurance policy issued by Granite State.[1] Under Fed.R.Civ.P. ("Rule") 54(d) Granite State is entitled to the allowance of costs "as of course." It has filed a bill of costs that is imaginative if nothing else and that has stimulated substantial objections on Abbott's part. For the reasons briefly stated in this memorandum opinion and

order, the objections are sustained in part and overruled in part.

■ "Costs" are not to be equated with expenses. They are (with limited exceptions) a term of art defined by 28 U.S.C. § 1920, rather than to be measured by the chancellor's foot. Instead this Court must be mindful of the Supreme Court's directive in *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964):

> We do not read that Rule [54(d)] as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case. Items proposed by winning parties as costs should always be given careful scrutiny. Any other practice would be too great a movement in the direction of some systems of jurisprudence that are willing, if not indeed anxious, to allow litigation costs so high as to discourage litigants from bringing lawsuits, no matter how meritorious they might in good faith believe their claims to be. Therefore, the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute. Such a restrained administration of the Rule is in harmony with our national policy of reducing insofar as possible the burdensome cost of litigation.

Indeed *Farmer* dealt with a situation having some strong resemblances to this case, and the Court there upheld District Judge Weinfeld's *denial* of more than the statutory costs attributable to witnesses from far-flung outposts (there Saudi Arabia, here Nicaragua). In our case Granite State's request for reimbursement of out-of-pocket expenses smacks of witnesses who took advantage of Granite State's deep pocket to fatten up (both literally and figuratively). Abbott's Supp.Resp. 1–2

---

1. Abbott had sued to recover for its damages (nearly $200,000, even after subtracting the $100,000 loss deductible under the policy) sustained when the Abbott facility in Managua, Nicaragua was looted at the time of the national unrest that resulted in General Somoza's depar-

ture and the Sandinistas' accession to power. Granite State established that the so-called "war exclusion clause" (really much broader in scope than the name implies) barred recovery under its policy.

(emphasis in original) has said (without contradiction in Granite State's Reply):

> The exhibits to Defendant's Motion to Tax Costs are a melange of mostly unintelligible documents. To the extent that sense can be made of these documents, it is clear that Defendant is attempting to be awarded a number of highly irregular costs not authorized by 21 U.S.C. § 1821. For example, one of the sheets attached to Defendant's Motion to Tax Costs is a bill for certain articles of clothing for one of the deponents. (Attached as Exhibit "A" to Plaintiffs' Supplement to Response). Other attachments include letters from the deponents asking for $600 apiece in reimbursement for food and local transportation costs allegedly incurred during their *six day* stay in Miami (attached as Exhibits B, C and D to Plaintiffs' Supplement to Response). The depositions of all three witnesses were completed in *one and one-half days.* Defendant also requests as costs a number of expenses the deponents allegedly incurred for a number of Nicaraguan fees and what might be most accurately described as bribes to local officials—the various "honorarios" listed in Dr. Espinal's letter of May 5, 1981. (Attached as Exhibit E to Plaintiffs' Supplement to Response.)

■ This Court need not accept all Abbott's contentions to reach the conclusion, as it has, that "additional sustenance" for the witnesses beyond the statutory provision should not be taxed here (a conclusion similar to that reached in this Court's prior opinion in *Ingersoll Milling Machine Co. v. Otis Elevator Co.,* 89 F.R.D. 433, 436 (N.D. Ill.1981)). This is not a case for imposing such excess (and excessive) expenses as Granite State desires.[2] Accordingly the taxable costs for witnesses will be limited to the amounts authorized by 28 U.S.C. § 1821, aggregating $1,876.20 (see ·Abbott's Supp. Resp. 3 and Granite State's Reply 3).

■ Abbott interposes no objection to the requested subpoena fees of $21, the court reporter and interpreter fees totalling $1,213.49 or the translator fees of $370. Only two items remain for brief discussion:

1. Granite State acquired, for its proposed use at trial, two newspaper videotapes showing conditions in Managua at the time the loss occurred. Abbott says that was redundant—that one would have been enough. Granite State has not given any persuasive reason (or in fact any reason) in reply. Only the more expensive videotape of $147 will be allowed as part of costs.

2. Granite State built up $1,484.40 in photocopying charges. This Court rejects Abbott's effort to second-guess which documents should have been copied and how many copies it was appropriate for Granite State to make. But a litigant is not entitled to saddle the opposing party with overhead expenses under the guise of taxable costs, and that is what Granite State's counsel's apparent $.20 per page charge[3] would do. Accordingly this Court has reduced the amount to three-fourths of the requested figure, or $1,113.30 ($.15 per page represents the standard photocopying charge made by a number of law firms known to this Court).

All the allowed items referred to in this opinion aggregate $4,740.99. That amount

---

**2.** Contrary to Granite State's Reply Mem. 1 (emphasis in original), Abbott's was not a "near *frivolous lawsuit.*" Abbott lost (and lost badly) on the merits, but it had really sustained a major financial loss that it was entitled to pursue against its insurer. Its lawsuit was colorable and advanced in good faith. Abbott's having lost the litigation is far different from demonstrating frivolousness (which might for example bring into play the newly-revised version of Rule 11).

**3.** This Court has not been enlightened as to Granite State's law firm's actual per-page charge for photocopying. But a review of Granite State's Group Ex. A indicates that the least common denominator for the individual charges (that is, greater than $.10, which Granite State indignantly rejects) is $.20.

is hereby taxed as costs in favor of Granite State and against Abbott.