782 F.2d 353
 RICO Bus.Disp.Guide 6166
 Aaron J. FURMAN, Alvin Katz, Francis P. Maglio, Martin J.
Joel, Jr., Harvey Sheid, Everard M.C. Stamm,
Robert C. Stamm, Plaintiffs,
Martin J. Joel, Jr., Harvey Sheid, Everard M.C. Stamm,
Robert C. Stamm, Plaintiffs-Appellants,
v.
John CIRRITO, Harold S. Coleman, John A. Miller, Francis G.
Rea, Peter M. Toczek, A.J. Yorke, Defendants-Appellees.
 Docket 84-7113.
 United States Court of Appeals,
Second Circuit.
 Originally Argued May 16, 1984 and Decided July 27, 1984.
Decided Jan. 24, 1986.
 
 Seymour Shainswit, Cooper Cohen Singer Ecker & Shainswit, New York City, for plaintiffs-appellants.
 Max Gitter, Paul Weiss Rifkind Wharton & Garrison, New York City, for defendants-appellees.
 Before CARDAMONE, PRATT and FRIEDMAN,* Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 A motion addressed to this panel requires us to address the subject of costs. Appellants' complaint was dismissed in district court. On appeal, we affirmed and costs were taxed against appellants. Certiorari was granted by the Supreme Court. It reversed, reinstated the complaint, and awarded costs in that Court to appellants. Appellants have now moved for vacation of our previous order taxing costs against them and for the awarding of costs in their favor. The motion is granted as described below.
 
 
 2
 * By order entered January 10, 1984 the United States District Court for the Southern District of New York (Cooper, J.), 578 F.Supp. 1535, dismissed the complaint of Aaron J. Furman, et al., in this civil RICO action, and directed that judgment be entered in favor of the defendants John Cirrito, et al., because the complaint failed to allege a separate and distinct racketeering enterprise injury under the RICO. On July 27, 1984, 741 F.2d 524, we affirmed Judge Cooper's order and directed that costs be awarded to defendants-appellees. An itemized and verified bill of costs was thereafter submitted and paid by appellants in the amount of $1,951.91. On July 2, 1985 appellants' petition to the Supreme Court for a writ of Certiorari was granted; our judgment affirming the district court was vacated, and the case was remanded to this Court for further proceedings.
 
 
 3
 Appellants thereafter sought first to have vacated the $1,951.91 in costs previously awarded to appellees, and to obtain an award of costs against appellees. Accompanying the motion was a verified bill of costs in the amount of $5,831.53. Thus, there are two questions presented: whether costs should be allowed and, if so, what amount should be awarded.
 
 II
 A. History of Costs
 
 4
 History sheds light on the first question. Awarding costs to successful litigants has been part and parcel of Anglo-American statutory jurisprudence for over 700 years, dating from the Statute of Gloucester, 6 Edw.I, c. 1 (1275). For the first several centuries following enactment of this statute, plaintiffs alone were awarded costs, but in the 16th century, the law was changed to entitle defendants to obtain costs as well. Not until the 17th century were costs awarded to defendants to the same extent as to plaintiffs. Costs in England were broadly defined to include all litigation expenses that one party had to pay to the other. Fees were those amounts paid by litigants to the Court Clerk. See Goodhart, Costs, 38 Yale L. Journal 849, 851-54 (1929).
 
 
 5
 Prior to the adoption of the federal rules in the United States--and in the absence of express statutory guidelines--federal judges assumed they possessed the inherent power to award costs. 10 Wright, Miller & Kane, Federal Practice and Procedure, Sec. 2665 at 170 (1983). In the early days of our Republic, American courts followed the English rule of burdening the losing party at law with costs, but keeping the award of costs within their discretion in equity suits. Id.
 
 
 6
 Today, the English award costs to control caseload volume and to discourage frivolous claims. Under the Federal Rules of Civil Procedures, costs in the federal courts are considered an incident of judgment and are not used as a punitive measure, nor to deter litigation. Hygienic Chemical Co. v. Provident Chemical Works, 176 F. 525, 527-28 (2d Cir.1910). They are awarded solely to reimburse the prevailing party for a part of his litigation expenses. Public policy considerations militate against allowing costs to be exacted as an "undue barrier to litigation." See Larchmont Engineering v. Toggenburg Ski Center, 444 F.2d 490, 491 (2d Cir.1971).
 
 
 7
 Costs, fees and expenses may be distinguished. The Federal rules define expenses more broadly than English law. They include all expenditures actually made by a party to the action. Costs are the amount awarded the prevailing party to indemnify him--at least in part--for expenses incurred. Fees are defined as those sums paid to a court clerk, their amount is usually specified by statute. They include, for example, court filing fees. 10 Wright, Miller & Kane, Federal Practice and Procedure, Sec. 2666 at 173. In 1853 a federal statute, Act of February 26, 1853, 10 Stat. 161, authorized the awards of costs to a prevailing party. See Marek v. Chesny, --- U.S. ----, 105 S.Ct. 3012, 3016, 87 L.Ed.2d 1 (1985).
 
 B. Federal Rules of Civil Procedure
 
 8
 In 1938 the Federal Rules of Civil Procedure were adopted. The determination of costs in the federal system is controlled in district courts by Fed.R.Civ.P. 54(d), in the circuit courts by FRAP 39 and in the Supreme Court by Supreme Court Rule 50. The structure and language of these provisions parallel each other and find their roots in those principles established in England centuries ago--the losing party pays the winner's costs, unless the court orders otherwise.
 
 
 9
 Two aspects of the rules governing costs that have required judicial interpretation involve the determination of who is the "prevailing party" and what are the boundaries of a court's discretion to award costs. "Prevailing party" has been variously interpreted to include an appellant who has had his case remanded to district court, see Knox v. Schweiker, 567 F.Supp. 959 (D.Del.1983); a party who has won a crucial jurisdictional issue on appeal, see Lazar v. Cecilia Co., 32 F.Supp. 420 (S.D.N.Y.1939); and other parties whose victories are neither clear-cut nor final.
 
 
 10
 The language of the district, circuit, and Supreme Court rules that confer discretion to award costs is almost identical. Federal Rules of Civil Rule 54(d) states "unless the court otherwise directs;" FRAP 39(a) and Supreme Court Rule 50 state "unless otherwise ordered by the court." A district court's discretionary authority has often been discussed, see e.g., Farmer v. Arabian American Oil Co., 379 U.S. 227 at 233, 85 S.Ct. 411 at 415, 13 L.Ed.2d 248 (1964); but few reported cases in the circuit courts or Supreme Court discuss the bounds of discretion. The Advisory Committee Note to Rule 39 states that an appellate court must exercise its equitable discretion under Rule 39 subject to the same presumptions which guide trial courts. See Advisory Committee Note to Rule 39, Subdivision (c) (reprinted in 9 Moore, Federal Practice p 239.01, at 39.4 (2d ed. 1976)); see generally Baez v. United States Dept. of Justice, 684 F.2d 999 (D.C.Cir.1982) (en banc).
 
 C. Rules Applied
 
 11
 When a district court judgment is reversed or substantially modified on appeal, any costs awarded to the previously prevailing party are automatically vacated. 10 Wright, Miller & Kane, Federal Practice and Procedure, Sec. 2668 at 213-14; Berner v. British Commonwealth Pacific Airlines, Ltd., 362 F.2d 799, 800 (2d Cir.1966); American Infra-Red Radiant Co. v. Lambert Industries, Inc., 41 F.R.D. 161, 162 (D.Minn.1966). The district court may not proceed to tax costs against the successful appellant, just as it may not act in any other fashion contrary to the circuit court mandate. See, e.g., Globe Indemnity Co. v. Puget Sound Co., 154 F.2d 249, 250 (2d Cir.1946) (if appellate court denied costs on an appeal, district court may not award them).
 
 
 12
 A parallel situation plainly exists when the Supreme Court reverses a circuit court order, which included an award of costs to the then successful appellee, and awards costs for the Supreme Court litigation to the now prevailing appellant. The award of costs by the circuit court must be vacated and costs awarded to the now successful appellant for appeals on both the circuit and Supreme Court levels, as well as for costs incurred in the district court. See Cotler v. Inter-County Orthopaedic Ass'n, P.A., 530 F.2d 536, 538 (3d Cir.1976) (taxation of costs follows the same principles at both trial and appellate levels).
 
 
 13
 Appellants have requested costs for the expenses of their appeal in this court. Although they lost in this Court, they claim that the Supreme Court's reversal of our order and award of costs entitles them now under Rule 39 to costs incurred before us as the actual prevailing party. We agree. It is often sound policy, of course, to wait until a controversy is finally decided on the merits before awarding costs, and to then determine who is the "prevailing party", instead of judging that issue piecemeal at each stage of the litigation. Nonetheless, it logically follows that, when a circuit court judgment is reversed by the Supreme Court, Rule 39 must be construed to define appellants as the prevailing party so as to entitle them to costs.
 
 
 14
 The issue decided by the Supreme Court is an involved discrete jurisdictional issue with important consequences for all RICO cases. Whether or not appellants ultimately prevail on the merits of their claim, the case has created a significant legal principle, and their action should not have been prematurely dismissed. Hence, we conclude that at this stage of the litigation, appellants are the prevailing party and just as the district court would be required to award them costs after a reversal by this Court, it follows that appellants are entitled to costs in this Court after a Supreme Court reversal of our order.
 
 III
 
 15
 Having decided that costs are properly awarded, we consider the bill of cost filed by the appellants. It immediately appears that several of the items claimed are nontaxable. Included in that category are charges for extra copies of the briefs and covers, authors alterations and overtime charges. Further, in accordance with FRAP 39(c) appellant is only entitled to claim the "necessary copies" of briefs and appendices and at rates not higher than those generally charged for such work in the area where the Clerk's office is located. Ten (10) has been established as the number of necessary copies of the brief to be filed with the Court, as provided by scheduling order, and two additional copies for each party. See FRAP 31(b). For the appendix, the number of necessary copies is also ten (10) for the Court, set forth in the scheduling order, and one for each party. Reproduction costs for the appendix are limited by Local Rule 39 to a maximum of $.20 per page. See Rule 39 of the United States Circuit Court of Appeals for the Second Circuit (adopted January 6, 1984). For briefs, the allowable reproduction costs are determined by the Clerk of the Court based upon periodic surveys of printers. It has been past practice to permit recovery of costs for 30 copies of briefs based upon our understanding that this is the accepted "minimum run" in the printing trade in New York City.
 
 
 16
 Therefore, the Clerk is directed to tax costs in accordance with the above against the appellees and in favor of the appellants and to have a statement of costs included with the Court's mandate. In addition, the order of July 27, 1985 directing appellants to pay appellees $1,951.91 in costs is vacated and appellees are directed to reimburse appellants in that amount. Finally, there is no dispute regarding the $250 awarded appellants under Rule 50 of the United States Supreme Court.
 
 
 
 *
 Honorable Daniel M. Friedman, of the United States Court of Appeals for the Federal Circuit, sitting by designation