**SYNTEX OPHTHALMICS, INC., et al., Appellees,**

v.

**Nick N. NOVICKY, et al., Appellants.**

**Appeal Nos. 86–563, 86–621.**

United States Court of Appeals,
Federal Circuit.

July 2, 1986.

Nick N. Novicky, pro se.

James W. Gould, Morgan, Finnegan, Pine, Foley & Lee, New York City, for appellees. With him on brief was Joseph A. DeGirolamo, New York City.

Before RICH, DAVIS and BALDWIN, Circuit Judges.

DAVIS, Circuit Judge.

This is the third time this case has come here, and we refer to our two previous opinions for the basic facts and prior rulings. *Syntex Ophthalmics, Inc. v. Novicky,* 745 F.2d 1423, 223 USPQ 695 (Fed. Cir.1984) (*Syntex I*), *vacated,* —— U.S. ——, 105 S.Ct. 1740, 84 L.Ed.2d 807 (1985), was our first and more extensive decision. The Supreme Court set aside that decision on one point because we had applied the federal law of former adjudication, rather than Illinois law, to an antecedent Illinois state decision on the ownership of certain patents involved in the case. In *Syntex Ophthalmics, Inc. v. Novicky,* 767 F.2d 901, 226 USPQ 952 (Fed.Cir.1985) (*Syntex II*), *cert. denied,* —— U.S. ——; 106 S.Ct. 1463, 89 L.Ed.2d 719 (1986), we came to the same result—applying Illinois law—and reinstated our conclusions and directions of *Syntex I.* Those were: (a) affirmance of the District Court's judgment[1] that Syntex (rather than Novicky) owned certain patents and applications in dispute; (b) remand to the District Court to consider the issue of Syntex's title to other, so-called "private patents," and also of Novicky's counterclaim for fraud and unjust enrichment with respect to those patents; (c) affirmance of the District Court's judgment[2] that Novicky had misappropriated Syntex's trade secrets; (d) affirmance of the District Court's denial[3] of Novicky's motion to remand his removed state action back to the state court; and (e) remand to the District Court to reconsider the duration and terms of its injunction[4] against Novicky with respect to the misappropriated trade secrets.

The District Court then decided the questions we remanded to it,[5] and Novicky, acting *pro se,* has again appealed.

## I.

On remand the District Court entered an injunction (with respect to the Syntex trade secrets) against Novicky for

1. No. 80 C 6257 (N.D.Ill. June 13, 1983).

2. 591 F.Supp. 28 (N.D.Ill.1983).

3. No. 81 C 4050 (N.D.Ill. Feb. 13, 1984).

4. No. 80 C 6257 (N.D.Ill. Feb. 9, 1984).

5. No. 80 C 6257 (N.D.Ill. Sept. 4, 1985) [available on WESTLAW, DCTU database].

eight years until May 12, 1986.[6] That date has now passed and the injunction is no longer in effect. We are not informed as to any current or future consequences which could keep alive any controversy over the terms or duration of that expired injunction. Accordingly, that whole question is now moot; it need not, and should not, be further considered. In the circumstances, there is likewise no need to vacate the expired injunction.

## II.

■ On remand, the District Court held a hearing (as we had directed) on the issue of the title to the "private patents," but Novicky—then appearing *pro se*—deliberately chose not to appear although he was in the courtroom immediately prior to that hearing. On the basis of that hearing, the prior record in this case, and Novicky's previous admissions and testimony, the court found that (a) Novicky had made the two inventions embodied in the "private patents" while employed by Syntex and prepared a patent disclosure for these inventions (though he did not then give that disclosure to Syntex); (b) Novicky deliberately applied by himself for those two patents, and the "private patents" issued as a result; (c) under Novicky's employment contract with Syntex, those two patents were assigned to Syntex because he made the inventions while in Syntex's employment; and (d) no employee or officer of Syntex waived its rights, or was authorized to waive its rights, in those two patents. These factual findings are well supported by the record, and cannot be deemed, in any part or any respect, to be clearly erroneous. In particular, the trial court had the benefit of, and expressly believed, the specific testimony of Courtland Spicer, a high Syntex official, that he had never told Novicky that Syntex gave up its rights to

those inventions, nor was he authorized to do so.[7]

■ Novicky proffers, with some support, the theory that the patent disclosure with respect to the two "private patents" was confused with another disclosure and was therefore "mislabeled." The effort is to show that the "private patent" inventions were not made by him while he worked for Syntex, but thereafter. Surprisingly, this position was not presented in this litigation until after our decision in *Syntex I*, and while the case was on remand. The District Court refused to allow the change in position. That ruling cannot be faulted in view of the three significant circumstances that (i) Novicky had earlier in this litigation admitted expressly and repeatedly that the invention had been made by him while he was in Syntex's employ, (ii) he must have known the time when he made those inventions and whether he worked for Syntex at that time, and (iii) this new point was belatedly brought into the litigation. Moreover, all the facts presented to us (by both sides) indicate that the so-called "mislabeling" might have just as likely been done by Novicky himself (rather than by Syntex) (yet Novicky refused to appear or to testify at the hearing on the title to the "private patents" so that this particular matter might possibly have been clarified). In this situation we refuse to hold that the District Court's determination of the title to the "private patents" was flawed because of its refusal to allow this new position to be advanced.

## III.

■ In *Syntex I* we also reversed the District Court's initial dismissal of Novicky's counterclaim for fraud and unjust enrichment with respect to the "private patents" discussed in Part II, *supra*. 745 F.2d at 1437, 223 USPQ at 706. In the same Memorandum Opinion and Order in

6. The beginning date was May 12, 1978, the day Novicky resigned from employment with Syntex.

7. An allegation as to such a conversation of Novicky with Spicer—on this matter of the ownership of the private patents—was the primary reason why we remanded that title issue for further inquiry in *Syntex I*, 745 F.2d at 1433, 223 USPQ at 702.

which the District Court disposed, on remand, of the "private patent" title issue, the court also held that "Novicky has utterly failed to present any credible evidence that would support his counterclaims of fraud and unjust enrichment." That counterclaim was again dismissed "with prejudice." The court having found that Syntex owned and continued to own the "private patents," it was obviously correct to rule that the counterclaim had not been proved. In addition, there was in fact nothing produced by Novicky (other than the arguments already considered in Part II, *supra*) to show that Syntex had committed any acts of fraud or that its retention of the patents resulted in any unjust enrichment.

■ Appellant says, however, that he was entitled to a jury trial on his counterclaim for fraud and unjust enrichment, and that his jury demand was timely as to that counterclaim. Even if we assume that the demand was timely for that purpose, the District Court could refuse to impanel a jury on at least two independent grounds. First, the basic issue of Syntex's title to the "private patents" arose under Syntex's equitable complaint (as to which there was no question as to a jury trial), and the court had already decided on overwhelming evidence that those patents belonged to Syntex; therefore, nothing was left to try under the counterclaim. Second, Novicky's deliberate refusal to appear at the trial and prosecute his counterclaim authorized the judge to dismiss the counterclaim for failure to prosecute. Fed.R.Civ.P. 41(b) and (c).

### IV.

■ The District Court entered a judgment order for costs [8] of $59,843.99 against appellant Novicky. The judge disallowed almost $20,000 of Syntex's bill of costs, and gave detailed reasons for the allowances he made. A court's allowance of costs to the

prevailing party (here, Syntex) cannot be disturbed in the absence of an abuse of discretion. *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964); *Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 781–82, 218 USPQ 673, 678 (Fed.Cir.1983). Novicky challenges the inclusion of the cost of depositions not read at the trials but 28 U.S.C. § 1920(2) expressly allows costs of transcripts "necessarily obtained for use *in the case*" (emphasis added), not only for use "at the trial". *See Chore-Time Equipment*, 713 F.2d at 781–82, 218 USPQ at 678. The trial court properly found that all the depositions for which costs are now sought were used by Syntex or Novicky in this case either in connection with the preliminary injunction or for the first trial. Witness fees were allowed as called for by 28 U.S.C. § 1821. There was, in sum, no abuse of discretion under the statutory standards of 28 U.S.C. § 1920 and § 1821.

■ Appellant presses two other general assaults on the costs award. He first says that Syntex inadmissibly reneged on a June 1983 oral stipulation not to seek damages, attorney fees, or other costs if a jury trial was waived by Novicky.[9] The record shows, however, that very shortly after that alleged stipulation Syntex's counsel specifically stated in open court that attorney fees were separable and different from damages, and "We do reserve the right to ask this Court for costs and attorney fees at the close of the case." Novicky did not at any time object to this explicit reservation until after the court had initially said (after the first trial) that it would allow such costs. The judge, who was present at the time of the alleged stipulation and of counsel's statement in open court, thereafter allowed costs. We cannot say, in this situation, that there was any violation of the stipulation actually made.

---

8. No. 80 C 6257 (N.D.Ill. May 7, 1984).

9. Appellant presents two affidavits (one by himself and one by his former counsel) attesting to this content of the alleged stipulation. The affidavits were made about one-and-a-half years after the pre-trial conference at which the stipulation was supposed to have been made.

The second general objection to any costs is that the District Court had no jurisdiction over the case—because our mandate had not yet been issued—at the time it reaffirmed its costs order after the last remand from this court. The fact is that the operative cost order was issued by the District Court in October 1985 after this court had issued its mandate and had refused Novicky's petition for mandamus or prohibition to direct the District Court to refrain from exercising jurisdiction in this case. We must conclude that the District Court did have jurisdiction of the case when it entered the specific costs order now before us.

The result is that we affirm the District Court's judgments, insofar as now before us, except with respect to the injunction which has expired.

AFFIRMED.