HEALTH–CHEM CORPORATION, Herculite Protective Fabrics Corporation, Leon C. Baker and Marvin M. Speiser, Plaintiffs,

v.

Seymour HYMAN a/k/a Sy Hyman, Defendant.

77 Civ. 5382.

United States District Court, S. D. New York.

Jan. 27, 1981.

Gordon, Hurwitz, Butowsky, Baker, Weitzen & Shalov by Franklin V. Velie, New York City, for plaintiffs.

Orans, Elsen, Polstein & Naftalis by Gary P. Naftalis, New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

This opinion arises out of defendant's application for attorneys' fees and costs in the wake of his successful defense against plaintiffs' claims. The application is premised on plaintiffs' alleged bad faith in bringing and maintaining this action. Some factual and legal recapitulation is necessary to create a proper backdrop for the court's discussion.

### FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

In 1976, defendant Hyman was discharged from his positions as President, Chief Executive Officer and Chairman of the Board of Health Chem Corporation (Health-Chem). Hyman was forced out of Health-Chem by two of his business partners, Leon C. Baker and Marvin M. Speiser, both of whom are plaintiffs in this action; Hyman's expulsion allegedly resulted from the discovery that he had diverted company funds to pay for personal expenses. Hyman contends the dismissal resulted from his opposition to certain corporate transactions engaged in, or contemplated by, Health-Chem. In December, 1976, Hyman brought suit in New York State Supreme Court against Health-Chem and various other parties alleging that he had been

wrongfully discharged. *See Hyman v. Health Chem-Corporation*, Index No. 23715/76 (Sup.Ct.N.Y. County) (the New York action).

In March 1977, the parties settled the New York action. As part of the settlement, Health-Chem purchased Hyman's holdings in another corporation known as Medallion. Health-Chem purchased this stock by giving Hyman $1,565,000 of Health-Chem Series B Convertible preferred stock. Hyman also received an option to sell the stock to Speiser and Baker for $1,150,000, which he subsequently exercised. Speiser and Baker purchased the preferred stock on May 11, 1977, by delivering cash and letters of credit in the agreed upon amount.

On May 26, 1977, a derivative action was commenced in federal court against various members of Health-Chem's management. *See Goldberger v. Baker*, 442 F.Supp. 659 (S.D.N.Y.1977). The derivative suit was subsequently dismissed by Judge Goettel of this court. On November 4, 1977, plaintiffs filed a complaint beginning the instant action. The complaint alleged a violation of Rule 10b–5 of the Securities and Exchange Commission along with other pendent state law claims.

The alleged violation of Rule 10b–5 was premised on the theory that Hyman knew about, and had participated in the preparation of, the derivative action when he entered into the settlement ending the New York action. According to plaintiffs' theory, Hyman had a duty to disclose to them the imminent derivative action. His failure to do so, coupled with his sale to Baker and Speiser of the convertible preferred stock, supposedly violated Rule 10b–5.

On June 16, 1978, defendant moved to dismiss the complaint. Defendant argued that, assuming *arguendo* he had knowledge of the imminent derivative action, his non-disclosure could not have been material because Health-Chem, Baker and Speiser were already on notice of the possibility of a derivative suit. This court denied the motion on December 1, 1978, finding that materiality was a disputed issue of fact which should not normally be determined on a motion to dismiss.

On December 10, 1979, the instant case came on for trial. During the course of the trial plaintiff attempted to introduce testimony from a Mr. Arthur Kanter concerning a conversation between Kanter and Hyman in which Hyman allegedly admitted to knowledge of the derivative action at the time he was engaged in settlement negotiations in the New York action. Mr. Kanter is a lawyer who was retained by Speiser and Baker to represent them in a small claims action against Hyman. This court ruled Kanter's testimony inadmissible under Federal Rule of Evidence 408 because the conversation took place in the course of negotiations to settle the small claims matter.

On December 11, 1979, at the close of plaintiff's case, this court dismissed plaintiff's claim. The court found that the plaintiffs knew, or should have known, about the possibility of a derivative suit. Thus, any non-disclosure by Hyman could not have been material. The court also found that there was no direct proof of any knowledge on Hyman's part about a derivative suit at the point when he was engaged in settlement discussions in the New York action. The dismissal was appealed and the Second Circuit Court of Appeals heard argument on June 6, 1980. This court's decision was affirmed by unreported memorandum decision on the following day, June 7, 1980.

## DISCUSSION

■ Comparison of the memoranda of law submitted by both sides reveals agreement on the applicable legal standard to be applied in determining this motion. The standard is found in the Second Circuit's recent decision in *Nemeroff v. Abelson*, 620 F.2d 339 (2d Cir. 1980) (*Nemeroff*). *Nemeroff* involved an appeal from an order awarding fees and costs because one of the parties was found to have proceeded in bad faith. The underlying litigation in *Nemeroff*, as here, involved alleged violations of federal securities law. The Second Circuit

ruled that in order for fees and costs to be awarded on grounds of bad faith

> ... there must be "clear evidence" that the claims are "entirely without color *and* made for reasons of harassment or delay or for other improper purposes."

.    .    .    .    .

> A claim is colorable, for the purpose of the bad faith exception, when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. The question is whether a reasonable attorney could have concluded that facts supporting the claim *might be established*, not whether such facts actually *had been established.*

620 F.2d at 348 (footnotes and citations omitted, emphasis in original). As illustrated by the rigorous nature of the standard which must be met, the power to award fees premised on a finding of bad faith is truly "exceptional," and will be exercised only in extreme cases. *Id.* As explained below, the court is unable to conclude that this is such a case.

Defendant alleges two distinct instances of bad faith on plaintiffs' part. First, the filing of this action allegedly evinces bad faith. Second, the maintenance of this action past a certain point in the discovery process was supposedly indicative of bad faith. Each alleged act of bad faith must be examined separately. Defendant's attempt to characterize the filing of this lawsuit as an act of bad faith in turn has three basic components: (1) There was overwhelming evidence that plaintiffs knew a derivative suit was likely; (2) Plaintiffs failed to make reasonable preliminary investigation before filing suit; and (3) The testimony by Mr. Arthur Kanter was insufficient basis for the suit.

Defendant points to a number of types of evidence establishing plaintiffs' knowledge of a possible derivative suit. This evidence includes: (1) admissions by Baker that he and Speiser had discussed possible derivative suits with Hyman and other directors, (2) an admission by Baker that Hyman's state court complaint could provide the basis for a derivative suit along with court records showing the public availability of the complaint in the New York action prior to the filing of the derivative action, (3) a transcript of the Health-Chem annual meeting held on January 11, 1977, in which a number of shareholders, including a plaintiff in the subsequent derivative action, indicated concern over intercorporate transactions and mentioned the possibility of derivative litigation.

■ While the evidence just described is undoubtedly probative as to whether plaintiffs knew about the possibility of a derivative suit, the manner in which defendant now seeks to use this evidence indicates a fundamental misconception of the inquiry currently facing this court. According to *Nemeroff*, the crucial consideration is whether the information possessed by plaintiffs could support the reasonable belief by plaintiffs that facts sufficient to support the claim "*might be established*, not whether such facts actually *had been established.*" 620 F.2d at 348. The fact that this court found knowledge of the possibility of a derivative suit on the part of Speiser and Baker is relevant in deciding whether information concerning a derivative suit is material. It is irrelevant to whether plaintiffs could reasonably believe that the allegations in their complaint were capable of proof.

An examination of the complaint shows that plaintiffs expected to prove knowledge by Hyman of the derivative suit which was actually filed *and* participation by Hyman in the preparation of the suit. Defendant's Memorandum of Law in support of the instant application incorrectly states that Speiser and Baker alleged a lack of knowledge on their part about any possible derivative actions. Instead, the complaint alleges a lack of knowledge about the specific suit subsequently filed. The evidence listed above relates to whether Hyman's alleged failure to disclose was "material" as the term is used in litigation under Rule 10b–5. It has no bearing on whether plaintiffs could in good faith believe the possibility of proving their case.

■ Defendant next seeks to characterize the filing of this action as an act of bad faith due to plaintiffs' alleged failure to investigate the charges in their complaint before it was filed. This accusation amounts to stating that plaintiffs did not question the plaintiffs or attorneys in the derivative action to determine whether Hyman had any hand in the preparation of the derivative action. However, it must be remembered that the plaintiffs in this action were defendants in the derivative action. The derivative action was filed on May 26, 1977, and dismissed by another Judge of this court on October 20, 1977. The instant action was filed only fourteen days later. The sort of investigation defendant contends should have been done would have entailed questioning opposing parties in a pending law suit concerning the circumstances under which the suit was prepared. It seems reasonable to assume that such "investigation" would probably have been impossible without the aid of compulsory process. In fact, after the instant action was filed, plaintiffs did depose both the derivative suit plaintiffs and their attorneys about Hyman's connection, if any, to the derivative action.

■ These depositions form the basis for defendant's last bad faith argument. Defendant contends that the deposition testimony of those individuals with first hand knowledge of the derivative suit was persuasive enough to force reasonable parties to abandon the action. Continuing the action in the face of the highly probative deposition testimony was therefore bad faith.

Defendant's final bad faith argument serves to illustrate the importance of the Kanter affidavit to the inquiry before this court. As mentioned above, defendant attacks the sufficiency of the Kanter affidavit as good faith support for even filing the instant action, let alone maintaining the action in the face of depositions contradicting Kanter from persons having direct knowledge of the derivative action. Kanter's testimony was the only direct evidence plaintiffs possessed. The other evidence supporting plaintiffs' theory of involvement by Hyman in the derivative action was all circumstantial: (1) an almost complete correlation between the complaint filed by Hyman in the New York action and the complaint in the derivative action; (2) the naming of all the members of the Health-Chem board as defendants in the derivative action except Hyman; (3) actions by Hyman indicating continued animosity toward the derivative suit defendants; and (4) surrender by Hyman of Health-Chem documents to the derivative suit plaintiffs under allegedly questionable circumstances.

Defendant argues that the Kanter affidavit was insufficient both quantitatively and qualitatively. In quantitative terms defendant contends that there was simply too much contrary evidence. Qualitatively Kanter's affidavit is allegedly irrelevant. For support of this second argument, defendants rely on the Second Circuit's characterization of Kanter's testimony in the unpublished affirmance of this court's decision to dismiss the action. The opinion reads in pertinent part:

> Whatever error Judge Motley may have committed in excluding Kanter's testimony under Fed.R.Evid. 408 was, at most, harmless. Hyman's statement to Kanter merely represents his opinion of the gravity of the charges against the companies. It in no way indicates that Hyman necessarily possessed additional information about those charges, or advance knowledge of the derivative-suit-plaintiffs' intentions. . . .

*Health-Chem Corp., et al. v. Hyman*, 633 F.2d 204 (2d Cir. 1980).

While defendant's arguments are not unpersuasive, they still fail to meet the "exceptional" showing necessary here. Despite the existence of a large amount of contrary evidence, and hearsay testimony that Kanter was prepared to revise or retract his affidavit, this court is faced with the uncontroverted existence *on the date of trial* of a sworn affidavit from Kanter stating in pertinent part:

> In the course of the discussion [Hyman] stated that he had sold his interest in

Medallion Group, Inc. to Health-Chem Corporation because he knew that there was *in preparation* a stockholder's suit against Medallion Group, Inc. . . .

Affidavit of Arthur Kanter, sworn on August 31, 1977, at pg. 2, ¶ 5 (emphasis added). The Second Circuit's characterization of Kanter's excluded testimony at trial is inapplicable to the Kanter affidavit.

This court realizes that even assuming the Kanter affidavit can be read as evidence of Hyman's knowledge about the specific derivative action actually filed, the state of the evidence on the date of trial clearly favored defendant. Nevertheless, this court is unable to conclude that on the date of trial the claims advanced by plaintiffs were "entirely without color." *Nemeroff v. Abelson, supra*, 620 F.2d at 348. The plaintiffs had some circumstantial evidence and the testimony of one witness. The extraordinary circumstances necessary for an award of attorneys' fees because of bad faith do not exist in this case.

## COSTS

Three items of defendant's bill of costs were denied by the judgment clerk of this court: (1) costs of a daily transcript for the two days of trial, (2) costs incurred in the preparation of certain charts, and (3) costs related to taking certain depositions. The court concludes that these costs were correctly disallowed in the case of (1) and (2), and incorrectly denied in the case of (3).

*Trial Transcript*

Defendant's counsel ordered a daily transcript of the trial. As described initially, the trial ended prematurely after two days when this court dismissed the action at the close of plaintiff's case. 28 U.S.C. § 1920 provides in pertinent part:

A judge or clerk of any court of the United States may tax as costs the following:

. . . . .

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case.

Typically a showing must be made that the action presented some particularly involved and complex factual or legal issues before the cost of a daily transcript may be recovered. *See Oscar Gruss & Son v. Lumberman's Mutual Casualty Co.*, 46 F.R.D. 635 (S.D.N.Y.1969), aff'd., 422 F.2d 1278 (2d Cir. 1970). No such showing is possible in this case. The court finds that the daily transcript was not "necessarily obtained" for use in this case. 28 U.S.C. § 1920.

*Charts*

Defendant prepared charts designed to illustrate the price fluctuations of Medallion and Health-Chem stock over time. The charts were prepared to show that the information in Hyman's possession, if any, was not material by demonstrating that the filing of the derivative suit had no effect on the share prices of these two companies. Defendant's Bill of Costs sought to recover $1,107.00 for the preparation of these charts.

Plaintiffs properly point out that no statute or civil rule makes explicit provision for reimbursement of costs incurred in connection with the preparation of charts or graphs for use at trial. The Supreme Court has admonished that "the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically authorized by statute." *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964). As a result, a number of courts have held that charts which merely illustrate evidence that could be given by testimony should be disallowed unless specifically allowed by the trial court before trial. *See* 6 Moore's *Federal Practice*, ¶ 54.77[6] at 1739 n. 11, 12. On the facts of this case, the elaborate charts involved here were not necessary merely to illustrate that certain stock prices had not declined with the filing of the derivative suit. The judgment clerk properly disallowed this component of defendant's Bill of Costs.

*Certain Deposition Expenses*

The depositions in question involve seven non-party witnesses. These witnesses were deposed concerning Hy-

man's knowledge about the derivative suit. Five of the seven depositions were noticed and paid for by plaintiff. With respect to those five depositions the only costs claimed by defendant involved obtaining copies. Contrary to a stipulation between the parties, deposition copies were not filed with the court. All seven depositions at issue involved witnesses listed by *plaintiff* as trial witnesses in the joint pre-trial order. Plaintiff has cited a number of cases for the proposition that deposition costs may only be taxed as costs when the deponent is unavailable for trial. This position is incorrect. The rule for some time in this Circuit has been "that, as long as the taking of the deposition appeared to be reasonably necessary at the time it was taken, it is within the court's discretion to allow taxation of its costs." *Alonso v. Union Oil of California*, 71 F.R.D. 523, 525 (S.D.N.Y.1976) (and cases cited therein). In the circumstances of this case the court believes that the cost of obtaining the five deposition copies and deposing the other two witnesses involved here was reasonably necessary to prepare for trial. Defendant is therefore entitled to an additional $437.10 for costs incident to taking depositions.

For the reasons just given, defendant's motion for attorneys' fees is denied. Defendant's motion for additional costs is granted in part and denied in part.

SO ORDERED.