Albert P. **BRUNO,** Plaintiff,

v.

**WESTERN ELECTRIC COMPANY,** Defendant.

Civ. A. No. 82–C–1333.

United States District Court, D. Colorado.

Sept. 26, 1985.

Alexander Halpern, Boulder, Colo., for plaintiff.

Lee Dale, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

On August 10, 1982, the plaintiff Albert P. Bruno ("Bruno") brought an action against the defendant, Western Electric Company ("Western Electric"), alleging that Bruno had been subjected to age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (1982). Bruno sought injunctive relief, reinstatement, expurgation of the record, damages for lost wages, damages for emotional pain and suffering, liquidated damages, punitive damages, and costs, including attorney's fees.

The trial was bifurcated. During the course of the liability trial, I struck Bruno's claims for punitive damages, front pay, and general damages for pain and suffering on the basis of the Tenth Circuit opinion in *Perrell v. Financeamerica Corp.,* 726 F.2d 654 (10th Cir.1984) which was published at about the time of trial. On February 6, 1984, the jury returned a verdict in favor of Bruno. The jury found: (1) that Bruno had been denied a job transfer because of his age; (2) that he had been transferred because of his age to a position for which he was not qualified; (3) that he had been demoted or paid a lower salary because of his age; and (4) that he had been subjected to harassment and other adverse working conditions while on the job. Further, the jury cleared the defendant of charges that Bruno had been denied a promotion because of his age. On April 18, 1984, Bruno was awarded damages of $30,419.16 as well as an adjustment in his pension plan to reflect his lost wages.

Two disputes remain unresolved: (1) On April 30, 1984, Bruno's attorneys submitted a motion seeking $75,455.50 in attorney's fees and an enhanced fee award to take into account the "contingent nature" of their fee arrangement with Bruno. (2) On

June 27, 1984, Bruno filed a motion seeking review of the Clerk's taxing of Costs, challenging the Clerk's decision to disallow $7,898.48 in claimed costs out of a total of $9,956.72 requested. Western Electric resists both motions. The parties have briefed the issues, and oral argument would not assist in resolving them.

## I. *Attorneys' Fees.*

■ The general rule is that absent a statute or enforceable contract, litigants must pay their own attorney's fees. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In this case, the statutory scheme authorizes attorneys' fees. Section 626(b) of the ADEA declares that "[t]he provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title (the Fair Labor Standards Act), and subsection (c) of this section." 29 U.S.C. § 626(b) (1982). Section 216(b) of the Fair Labor Standards Act of 1938 in turn states that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (1982).

In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the United States Supreme Court elucidated standards for determining the proper amount of an award of attorney's fees:[1]

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee. The result is what matters.

If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.

. . . . .

[Finally], [w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 435–36, 440, 103 S.Ct. at 1940–41, 1943. (Citation and footnote omitted).

Western Electric's opposition to the Motion for Award of Attorneys' Fees raises four principal issues: (1) whether Bruno achieved excellent results or merely limited success; (2) whether Bruno's claims were distinct and separate from each other, or were related; (3) whether some of the hours billed were duplicative; and (4) whether Bruno's attorneys are entitled to an enhanced award.

### A. *Degree of Success Achieved.*

The first issue is whether the plaintiff achieved excellent results or only limited success. Western Electric argues that Bruno achieved only limited success because many of his damage claims were rejected as not recoverable under the ADEA: "After striking all the damages for physical and emotional pain and suffering and punitive damages, and all damages for a promotion and half the damages for the

---

1. The action to recover attorney's fees in *Hensley* was brought under 42 U.S.C. § 1988 (1982). However, the reasoning in *Hensley* is "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'" *Hensley,* 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7. *See Heiar v. Crawford County,* 746 F.2d 1190 (7th Cir.1984). (In assessing attorney's fees in an ADEA action, the court should be guided by the *Hensley* standards.)

lateral transfer, the total recovery is proportionately minimal in terms of the hours and fees requested." Defendant's Memorandum of Law on Issue of Attorneys' Fees at 3. Bruno responds that he achieved excellent results because he "prevailed on eleven of the twelve contested factual issues defined in the Pretrial Order, [and] in essence also prevailed on all the contested issues of law except those relating to the availability of compensatory damages for pain and suffering and punitive damages under the ADEA." Plaintiff's Brief Supporting Motion for Attorneys' Fees at 3.

■ Western Electric's argument that the award of attorneys' fees should be reduced because Bruno did not recover all of the damages he sought must be rejected. In *Hensley*, the court repudiated any formalistic method which would automatically link a plaintiff's overall success to the relief granted.

> "Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended *if the relief obtained justified that expenditure of attorney time.*" *Hensley*, 461 U.S. at 436 n. 11, 103 S.Ct. at 1941 n. 11. (Emphasis added).

In *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983), the Tenth Circuit emphasized that any approach that drew a strict correlation between a plaintiff's monetary recovery and an assessment of his success on the merits would be flawed, since such an approach would ignore the fact that different issues would have varying degrees of importance:

> "Some courts have reduced fees when the thrust of the suit was for monetary recovery and the recovery was small compared to the fees counsel would have received if compensated at a normal rate for hours reasonably expended. *We reject this practice.* The amount of monetary recovery is not as significant as the

policy being vindicated.... It should not be expressed as a requirement that the fee award have a particular relationship to the amount of the monetary recovery." *Ramos*, 713 F.2d at 557. (Emphasis added).

■ This is not to imply that the amount of damages awarded is irrelevant to a court's determination of the extent of the plaintiff's success. In fact, the award of damages may be of crucial importance in evaluating whether the relief obtained justified the expenditure of attorney time. In *Nephew v. City of Aurora*, 766 F.2d 1464 (10th Cir.1985), the court ordered the reduction of a $12,500 award of attorney's fees because the award of damages to the plaintiff was a nominal award of only $2. The court's decision was prompted by its conclusion that the nominal recovery reflected to some extent the relative merits of the litigation:

> "[T]he approach set forth in *Hensley* ... [provides] incentives for *meritorious* civil rights litigation. It instructs a lawyer to critically evaluate the prospects for success in each potnetial ... claim, and it encourages the lawyer to proceed only with those claims that are indeed meritorious." *Id.* at 1466, quoting *Cooper v. Singer*, 719 F.2d 1496, 1502 (10th Cir. 1983). (Emphasis in original.)

The court's decision manifests concern that an award of only nominal damages reflects a claim of questionable merit or minimal importance. *Nephew*, however, does not reject the position espoused in *Ramos* —that it is not necessary to have a "particular relationship" between an award of attorney's fees and a plaintiff's monetary recovery. In fact, *Nephew* expressly rejects such a reading. "We do not imply that an award of nominal damages necessarily means that a corresponding fee award must also be nominal." *Nephew*, at 1467. *Nephew* simply refines the court's position in *Ramos* to ensure that attorney's fees will be awarded only when a claim is meritorious and substantial as well as successful. Claims that are trivial, and thus just short of frivolous, should not be en-

couraged by awarding substantial attorneys' fees to attorneys who file them.

■ In the present case, I find and conclude that the award of attorney's fees should not be reduced on the ground that Bruno's success was limited. The single claim in this case was predicated on Bruno's contention that Western deliberately and systematically discriminated against him because of his age. His success on that claim was virtually complete. The fact that one of the circumstances that Bruno believed would illustrate that design—denial of a job promotion—was found not to have been based on discrimination does not negate Bruno's overall success. "[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

■ Nor is Bruno's overall success reduced by the fact that his plea for injunctive relief was mooted when he accepted a favorable early retirement settlement. When a legal position advances the interests of a client by obtaining a significant concession from the defendant, its technical success or failure is less significant than the result. *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D.Cal.1974), *aff'd* 550 F.2d 464 (9th Cir.1977), *rev'd on other grounds*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). "The result is what matters." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. Finally, although Bruno did not prevail on the issues of punitive damages and damages for physical and emotional pain and suffering, his positions were based on substantive legal grounds raising unresolved legal issues. Therefore, the time spent on those issues was "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Davis v. City of Los Angeles*, 8 E.P.D. 5047, 5049 (C.D.Cal.1974) (Cited by Congress to illustrate a proper application of § 1988 in awarding attorney's fees. *See* S.Rep. No. 94–1011, 94 Cong. 2 Sess. 6

(1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5913.). The overall results achieved by Bruno, while not perfect, were sufficient to uphold an award of full attorney's fees.

B. *Treatment of Unsuccessful Claims.*

■ Western Electric's second objection to the amount of attorney's fees requested by Bruno is based on the premise that at least two of Bruno's unsuccessful claims—that he was denied a promotion because of discrimination and that he was entitled to damages for physical and emotional pain and suffering—were distinct from the successful claims. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943. However, a lawsuit which involves "a common core of facts or [is] based on related legal theories ... cannot be viewed as a series of discrete claims." *Id.* at 435, 103 S.Ct. at 1940.

The issue of whether Bruno was denied promotion on the basis of discrimination is not "distinct in all respects" from the other issues. It arises out of a common core of facts with those issues raised successfully by Bruno. In this court's order of March 6, 1984, I noted that "the conduct complained of constituted a single, continuous, uninterrupted course of discriminatory activity from the outset to the time of trial." *Bruno v. Western Electric Co.*, No. 82–C–1333 (D.Colo. March 6, 1984) (Order denying defendant's Motion for Directed Verdict or for Judgment Notwithstanding the Verdict or for New Trial). Bruno's failure to receive a promotion was only one of a myriad of actions characterized by Bruno as discriminatory, all of which combined to form his claim for relief.

Likewise, the issue of whether Bruno could recover punitive damages turned on the same "common core of facts" as the issue of whether Bruno could recover lost wages or liquidated damages. Under the standard adopted in *Hensley*, neither the

promotion issue nor the issue of punitive damages can be viewed separately from those issues raised successfully by Bruno. Consequently, Bruno's failure to prevail on those issues should not affect the recovery of attorney's fees for time spent on them.

■ Finally, Western Electric objects to the awarding of attorney's fees for two unsuccessful motions to compel. When assessing attorney's fees, however, it "is not legally relevant that the plaintiffs' counsel expended a certain limited amount of time pursuing certain issues of fact and law ... upon which plaintiff ultimately did not prevail." *Davis*, 8 E.P.D. at 5049. The issue is whether the time spent on the unsuccessful motions was "reasonably expended in pursuit of the ultimate result...." *Id.* These motions meet that standard. Therefore, Western's contention that attorney's fees are not recoverable for the two unsuccessful motions to compel is without merit.

### C. *Duplicative Services and Training New Attorney.*

Western has also requested that this court reduce the award of attorney's fees by $1,729.25 on the ground that 25.3 hours reflect duplicative effort and new lawyer training that would not ordinarily be charged to the client. The hours in dispute are 19.5 hours where both attorneys for Bruno attended various depositions, and 5.8 hours where both attorneys attended pre-trial conferences. Bruno has responded that it was necessary and reasonable for both attorneys to appear at depositions, hearings and the trial because the division of responsibilities between them was such that neither individual alone would have been adequately prepared to conduct the proceeding independently.

■ Fees generally cannot be recovered for duplicative services. *Ramos*, 713 F.2d at 554. In particular, "the presence of more than one lawyer at depositions and hearings must be justified to the court." *Id.* at 554, n. 4. Today it has become all too common for two, or even more, attorneys to appear at a hearing, deposition or other proceeding where one lawyer tradi-

tionally appeared. Indeed there are hearings where firms send not one lawyer, but a "flight" of them, consisting of a senior partner, one or more juniors or associates, and several paralegals. Whether this is legal "featherbedding" or merely an effort to give young people more courtroom experience, there can be no justification for charging the excessive time to an opponent who lost the case. While there was no such apparent featherbedding in this case, Bruno's attorneys have not adequately justified the presence of both attorneys at the various depositions and conferences in dispute. Bruno's assertion that neither individual alone would have been adequately prepared to conduct the proceeding independently is belied by his attorneys' own description of the division of labor between them. Further, the defendant's undisputed averment that one of the plaintiff's attorneys was recently graduated from law school and admitted to the bar gives credence to the supposition that the presence of the junior attorney was "for the purpose of being trained." *Ramos*, 713 F.2d at 554 n. 4. Such hours would not normally be billed to one's client, and therefore are not properly billed to one's adversary. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939.

### E. *Enhanced Fee Award.*

Finally, Western Electric objects to Bruno's attorneys' request for an enhanced fee award. Bruno's attorneys have asserted that an enhanced fee award is appropriate to take into account the contingent nature of the fee arrangement.

In *Hensley*, the Supreme Court noted that "in some cases of exceptional success, an enhanced award may be justified." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. In a concurring opinion in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), Justice Brennan argued that "the risk of not recovering any attorney's fees is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee." *Id.* at 1550. The majority, however, expressly declined to consider whether "the

risk of not being the prevailing party ... and therefore not being entitled to an award of attorney's fees from one's adversary, may ever justify an upward fee adjustment." *Id.* at 1550 n. 17. In my view the contingent fee system well serves the public and judicial administration. It provides for many worthy causes access to the justice system that otherwise would be deprived solely because the would-be plaintiff cannot afford a lawyer. Thus the contingent fee advances our ideal of equal justice under law. Moreover, the contingent fee discourages lawyers from accepting bad cases they are likely to lose and thus not be paid for. In addition, such fee arrangements tend to minimize unneeded discovery motions and time wasting practices which can be profitable for a lawyer whose hourly charge "meter" is running.

 Regardless of whether an enhanced fee award is ever appropriate to reflect the contingency of the fee because of the risk of not winning, I conclude that it is not appropriate in this case. Although Bruno's attorneys contend that this case was "essentially contingent," the facts do not support their position. Bruno's arrangement with his attorneys simply was not contingent on the success or failure of the suit. His attorneys had arranged to "bill him monthly for fees at the prevailing rate of the attorneys involved and costs as incurred." (Defendant's Memorandum of Law on Issue of Attorneys' Fee, Exhibit A.)

## II. *Taxing of Costs.*

The second dispute that remains unresolved concerns $7,898.48 in costs disallowed by the Clerk of this court. The Clerk denied: (1) all recovery by Bruno for expert witness fees, totalling $5,870.00; and (2) all of Bruno's deposition expenses except those related to the Burris and Stein depositions, amounting to $2,028.48.

### A. *Expert Witness Fees.*

 Under 28 U.S.C. § 1920 (1982), the general costs statute, expert witness fees are not recoverable as costs. *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983); *Clev-*

*erock Energy Corp. v. Trepel,* 609 F.2d 1358 (10th Cir.1979). Consequently, the clerk was correct in refusing to tax the expert witness fees as costs under § 1920. However, this does not mean that expert witness fees are never recoverable. In actions under Title VII, 42 U.S.C. 2000e *et seq.* (1982), expert witness fees may be reimbursed as part of "attorney's fees" under 42 U.S.C. § 1988. *Ramos,* 713 F.2d at 559. The issue in this case is whether such costs are recoverable as part of "attorney's fees" in actions under the ADEA.

The parallels between Title VII and the ADEA are numerous. The acts share similar aims—the elimination of arbitrary discrimination in the work place—and their substantive prohibitions are virtually identical. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 755, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979); *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). "In fact, the prohibitions of the ADEA were derived *in haec verba* from Title VII." *Id.* at 584, 98 S.Ct. at 872. Further, the evidentiary guidelines used in Title VII actions to allocate the burdens of proof have also been applied to ADEA cases. *Sutton v. Atlantic Richfield Co.,* 646 F.2d 407, 411 (9th Cir.1981). Overall, the ADEA's coverage and most of its operative provisions are substantially identical to those of Title VII. 3 A. Larson & L. Larson, *Employment Discrimination,* § 98.00 (1984).

The general symmetry which exists between Title VII and the ADEA is further reflected in the language of their respective attorney's fees statutes. The ADEA's fee recovery statute provides for a prevailing party to be awarded "reasonable attorney's fees ... and costs of the action." 29 U.S.C. § 216(b) (1982). Section 1988 grants the prevailing party "a reasonable attorney's fee as part of the costs." Considering the similarities between the ADEA and Title VII, both generally and in regard to their recovery statutes, it is logical to apply the same definition of "attorney's fees" to cases arising under either the ADEA or Title VII. *Heiar v. Crawford County,*

*Wis.,* 746 F.2d 1190, 1203 (7th Cir.1984); *See Russell v. Curtin Matheson Scientific,* 27 F.E.P. 1336 (S.D.Tex.1984). Furthermore, it would be anomalous to apply a § 1988 standard when determining the proper recovery of attorney's fees in an ADEA action, *see Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and then to reject its definition when deciding what is included in the term "attorney's fees."

I conclude that the reasoning that includes expert witness fees as part of "attorney's fees" in Title VII cases also applies to actions arising under the ADEA. Therefore, expert witness fees are recoverable as "attorney's fees" in this action if they are "reasonably necessary" to the plaintiff's case. *See Ramos,* 713 F.2d at 559, 10 C. Wright and A. Miller, *Federal Practice & Procedure* § 2678 (1973).

▉ The standard of what is "reasonably necessary" to a case must be applied with some flexibility. The purpose of such a standard is not to discourage thoroughness in trial preparation under the guise of economic efficiency, but to prevent the squandering of an adversary's resources. An expert witness is "reasonably necessary" to the case if, at the time he or she is retained, the testimony constitutes a vital and integral part of the preparation of the case. *See Russell v. Curtin Matheson Scientific,* 27 F.E.P. 1336 (S.D.Tex.1981) (Witnesses were vital to the case even though the case was settled prior to trial.)

▉ "Although it is ordinarily the rule that no fee may be allowed for witnesses who do not testify at trial, this presumption may be overcome if it is shown that their testimony was rendered unnecessary by the occurrence of some extrinsic circumstance." *Wehr v. Burroughs Corp.,* 477 F.Supp. 1012, 1022 (E.D.Pa.1979), *modified on appeal,* 619 F.2d 276 (3rd Cir.1980); 10 C. Wright & A. Miller, *Federal Practice & Procedure* § 2678 (1973). In the present case, Bruno has overcome that presumption as to all three of his experts. Dr. Cayton was retained specifically to rebut Western Electric's witness, Dr. Stanfield,

and did not testify only because Western Electric made a strategic decision not to use Dr. Stanfield. Dr. Singell would have testified but for a stipulation on the eve of trial that rendered his testimony irrelevant. *See Wehr,* 477 F.Supp. at 1022. Finally, Dr. Prentice did not testify only because the issue upon which he was to testify was mooted by the decision in *Perrell v. Financeamerica Corp.,* 726 F.2d 654 (10th Cir. 1984), handed down during the course of trial. It is apparent, then, that the testimony of these experts was rendered unnecessary only by the occurrence of extrinsic events. Their fees should be allowed.

B. *Deposition Costs.*

▉ Expenses for copies of depositions which are reasonably necessary to the prosecution of a case are recoverable under 28 U.S.C. § 1920 (1982). *Ramos v. Lamm,* 713 F.2d 546, 560 (10th Cir.1983). The necessity of a deposition should not be analyzed in a moment of crystal clarity induced by hindsight. Deposition costs should be allowed if the depositions "were reasonably necessary when taken, even if not later used at trial." *O'Donnell v. Georgia Osteopathic Hospital,* 99 F.R.D. 578, 581 (N.D.Ga.1983); *Health-Chem Corp. v. Hyman,* 523 F.Supp. 27, 33 (S.D. N.Y.1981); *Alonso v. Union Oil of California,* 71 F.R.D. 523, 525 (S.D.N.Y.1976). In this day of increasing awareness of lawyer malpractice exposure, it is unfair to require that a deposition be taken to meet a standard of reasonable care in preparation, and then, after the trial, to characterize it as "unnecessary" because the conditions which made it necessary before no longer exist.

▉ In this case, I find and conclude that all of the depositions at issue were reasonably necessary to the case except those of Messrs. Bennett and Willman. These deponents did not testify at trial, their depositions were not introduced or read at trial, and there is no indication that they were ever intended for use at trial. Therefore, those two depositions were not

reasonably necessary for the prosecution of this case. I find and conclude that all of the other depositions at issue were reasonably necessary for the prosecution of the case.

The form of the affidavits accompanying the plaintiff's motion is not sufficiently detailed to allow me to determine what portion of the total deposition costs sought is attributable to the depositions of Bennett and Willman. Therefore, counsel are ordered to meet and confer to determine an appropriate amount to be subtracted from the requested sum of $2,028.48. If counsel are unable to agree, they shall submit appropriate motions with accompanying affidavits and a request for expedited hearing.

Accordingly, it is ordered that:

1. Plaintiff's motion to recover attorney's fees is granted in the amount of $73,726.25.

2. Plaintiff's motion to recover expert witness fees is granted in the amount of $5,870.00.

3. Plaintiff's motion to recover deposition costs is granted in an amount to be agreed upon by the parties or absent such an agreement, in an amount to be determined by the court.