**PACIFIC WEST CABLE COMPANY, Plaintiff,**

v.

**CITY OF SACRAMENTO, CALIFORNIA, a municipal corporation; and County of Sacramento, California, a municipal corporation, Defendants.**

Civ. No. S–83–1034 MLS.

United States District Court, E.D. California.

Aug. 8, 1988.

Harold R. Farrow, Robert M. Bramson, Siegfried Hesse, Farrow, Schildhause & Wilson, Walnut Creek, Cal., Richard Alexander, San Jose, Cal., for plaintiff.

Michael A. Small, Kathleen M. McGinnis, Preston, Thorgrimson, Ellis & Holman, Seattle, Wash., W. Young, K. Broerick, Preston, Thorgrimson, Ellis & Holman, Washington, D.C., James Jackson, Sacramento City Atty., Sacramento, Cal., L.B. Elam, Deputy County Counsel, Sacramento County, Sacramento, Cal., for defendants.

Stephen L. Goff, Sacramento, Cal., amicus curiae.

## MEMORANDUM AND ORDER

MILTON L. SCHWARTZ, District Judge.

Plaintiff, Pacific West Cable Co. ("Pacific West"), filed this action on September 9, 1983, against the City of Sacramento and the County of Sacramento pursuant to 42 U.S.C. § 1983 alleging a violation of the first amendment to the United States Constitution, violations of Sections I and II of the Sherman Act, 15 U.S.C. §§ 1 and 2, and violations of Article I, Section 2 of the California Constitution. The antitrust claims were dismissed pursuant to defendants' motion, which was heard on April 20, 1984, and plaintiff proceeded to trial on the free speech claims only. A 34–day jury trial was held from March through June, 1987, after which the jury returned a series of special verdicts mainly in plaintiff's favor although it found zero damages. The court entered judgment pursuant to the special verdicts and for declaratory and injunctive relief.

On August 11, 1987, plaintiff, as the prevailing party in the litigation, filed a motion for statutory attorney's fees pursuant to 42 U.S.C. § 1988 and for recovery of costs. Plaintiff also subsequently filed a number of post-trial motions seeking judgment notwithstanding the verdict, amendment of judgment, and new trial. All motions were heard on March 18, 1988, along with defendants' motion to alter or amend judgment. The court granted plaintiff's motion for attorney's fees and costs; it then denied all other motions. Determination of the amount of fees and costs to be awarded was taken under submission. The court, having thoroughly considered the parties' papers submitted on this motion, the applicable law in this area and its own first-hand knowledge and observations of the underlying trial proceedings, now renders its decision as to the amount of the award.

The court announced to the parties at the hearing on March 18 that the statutory purpose of section 1988 is not to enable the successful litigant to recover the amount of fees chargeable by the best attorney in the field; that it interprets the legislative grant of reasonable fees as an entitlement to a a a reasonable amount to be shifted from one party to the other. As the Supreme Court stated in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986):

> These statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws. Hence, if plaintiffs ... find it possible to engage a lawyer based on the statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied.

*Pennsylvania,* 106 S.Ct. at 3098.

A further problem arises when the court is presented, as here, with the question of what if any non-statutory costs should be awarded to the prevailing party. In this

regard the parties have assisted the court by reducing their disagreement to the single question of whether plaintiff should be reimbursed for the amounts paid by it as expert witness fees.

## DISCUSSION

Section 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs," 42 U.S.C. § 1988, in federal civil rights actions. This and other federal statutes which allow for a fee-shifting arrangement have spawned an enormous amount of case law to guide the courts in determining when to award attorney's fees and in what amounts.

### A. The Lodestar Amount

The relevant starting point in determining the fee award is the "lodestar" amount, which is reached by multiplying the number of hours reasonably spent on the litigation times a reasonable hourly rate. See Pennsylvania, 106 S.Ct. 3088, 3097; Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir.1987). The Ninth Circuit imposes the additional requirement that the fee award reflect consideration of the factors developed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir.1975), cert. denied, sub nom., Perkins v. Screen Extras Guild, Inc., 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Those factors are the following:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

526 F.2d at 70. Nonetheless, the Ninth Circuit has also followed the Supreme Court's view that " 'many of these factors usually are subsumed' within the lodestar calculation." Jordan, 815 F.2d at 1262 (quoting Pennsylvania, 106 S.Ct. at 3098).

Furthermore, the Ninth Circuit does not restrict the district court's review of the fee request to the Kerr factors. See Chalmers v. City of Los Angeles, 796 F.2d 1205, 1211 (9th Cir.1986), modified, 808 F.2d 1373 (1987). "What remains important is that the district court articulate with sufficient clarity the manner in which it makes its determination of a reasonable hourly rate and the number of hours which should reasonably be compensated." Id. at 1211 (citation omitted).

There is a " 'strong presumption' ... that the lodestar figure represents a 'reasonable' fee...." Jordan, 815 F.2d at 1262 (citing Pennsylvania, 106 S.Ct. at 3098). It is because of the heavy presumption of reasonableness that the lodestar figure must be scrutinized by the court to determine whether the hourly rate and number of hours are reasonable.

> Consequently, a critical inquiry in determining a reasonable attorneys' fee for purposes of § 1988 is the reasonable hourly rate.... The fee applicant has the burden of producing satisfactory evidence.... If the applicant satisfies its burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee contemplated by § 1988.

815 F.2d at 1262–63 (citations and footnotes omitted).

Plaintiff's lead attorney, the Farrow firm, is not very clear about how it calculated its proposed lodestar amount. The firm merely provides the total number of hours, time slips, a chart listing the hourly rates for each attorney, and the total amount of fees sought; the court is then left to determine whether the claimed amount is the proper lodestar.

### B. Reasonable Hourly Rate

The fee applicant has the burden of supplying the court with "records 'suffi-

cient[ly] detail[ed] that a neutral judge [could] make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.'" *Jordan*, 815 F.2d at 1263 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 441, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983) (Burger, C.J., concurring)). A reasonable hourly rate is determined with regard to the prevailing rate in the community, although the skill, reputation and experience of the particular attorney are relevant factors. The attorney seeking to recover fees has the burden of presenting the court with competent evidence to support the requested hourly rate. *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547 n. 11 (1984).

Plaintiff is represented by the law firm of Farrow, Schildhause & Wilson, its primary representative, and The Boccardo Law Firm which conducted the trial of the case. The Farrow firm requests $1,242,156.90 in fees and the Boccardo firm requests $209,050 in fees.[1] Approximately eighteen attorneys and seven law clerks from the Farrow firm worked on the case at various times throughout its four and one-half year history. The hourly rates for their services range from $40 to $250 per hour. Only one attorney from the Boccardo firm, Richard Alexander, who is no longer associated with that firm, worked on the case. He seeks compensation for his services at $250 per hour. No documentation has been submitted to the court in support of the claimed hourly rates of any of the attorneys except Harold Farrow and Richard Alexander. Mr. Farrow also seeks compensation at $250 per hour.

■ Plaintiff's counsel submit a survey by The National Law Journal of hourly rates charged by attorneys allegedly of comparable skill and experience in major cities across the nation in order to demonstrate that $250 per hour is a reasonable hourly rate. They contend that the major cities in the nation represent the relevant community because cable companies gener-

ally do not hire local counsel, but seek counsel experienced to meet the challenge presented by "the caliber of attorney a government on the defensive is likely to employ." Therefore, in light of counsel's assumption that the local community has no attorneys of comparable skill and experience, no attempt was made to show how that hourly rate compares to the rate prevailing in the Sacramento area.

The court has already cautioned that although the skill and experience of the attorneys seeking fees are relevant factors, plaintiff is not necessarily entitled to the fees charged by the best attorney in the field, nor is the particular attorney guaranteed compensation at his normal hourly rate. Moreover, these journal articles are not competent evidence of the reasonableness of the claimed hourly rate if for no other reason than the fact that there has been no explanation provided to the court as to the basis of the survey or the method of collecting the data. Therefore, the court has determined that plaintiff's counsel have not sustained their burden of presenting sufficient evidence to support their claimed hourly rate and on that basis assumes the task of finding reasonable hourly rates.

■ Defendants contend that Mr. Farrow's hourly rate is excessive, particularly in those instances when he acted outside his area of expertise. With respect to the Boccardo firm's hourly rate, defendants argue that the case could have been tried, indeed was scheduled to be tried, by two Sacramento attorneys, formerly of the Farrow firm, before Mr. Alexander was called in just before trial. Those attorneys were to be compensated at an hourly rate of $150 per hour. Defendants maintain that this reflects a judgment by the Farrow firm that the case could adequately have been tried by either of these two attorneys. Thus, there appears to have been no special necessity for seeking outside counsel to conduct the trial of the case.

---

**1.** Mr. Farrow reduced the firm's initial $1,231,605.15 fee request by $17,168.75. This reduction brought the fee request to $1,214,436.40. The Farrow firm later added $27,720.50 for the time spent on post-trial motions which is reflected here in the amount of the fee request. Plaintiff's counsel do not request application of a bonus or multiplier.

Moreover, in fixing a reasonable hourly rate, the court may consider the hourly rate of opposing counsel. *See Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 767–68 (7th Cir.1982), *cert. denied*, 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983); *Farris v. Cox*, 508 F.Supp. 222, 227–28 (N.D.Cal.1981) (footnote omitted). In this case, the hourly rates of defendants' counsel, Michael Small and Kathleen McGinnis, were $150 and $90 per hour respectively. In light of plaintiff's counsel's argument that the hourly rate should in some way reflect the skill and experience required to match that of opposing counsel, the court finds that $150 per hour is reasonable as the highest rate of compensation. Accordingly, the court concludes Mr. Farrow should be compensated at that rate for his time and Mr. Alexander compensated at that rate for his time.

Mr. Robert Bramson, also of the Farrow firm, spent the greatest number of hours working on the case of all the attorneys at that firm. Therefore, the court considers Mr. Bramson to have been Mr. Farrow's primary assistant throughout the course of the litigation and that he should be compensated at $90 per hour. With regard to the other attorneys at the Farrow firm, they should receive compensation for their services at $85 per hour. It has been extremely difficult to determine reasonable rates of compensation for these attorneys because no documentation was submitted in support of their hourly rates. The court believes that $85 per hour is thoroughly adequate compensation for the limited role they played in the litigation. It also notes that $85 per hour is the actual hourly rate of many of the associates at the Farrow firm.

### C. *Reasonable Number of Hours*

The cases do not indicate that every minute of an attorney's time must be documented; they do, however, require that there be adequate description of how the time was spent, whether it be on research or some other aspect of the litigation, and the Supreme Court has indicated that fee awards may be reduced for inadequate documentation of hours. *See Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. The district court is also instructed that it "should exclude from th[e] initial fee calculation hours that were not 'reasonably expended.'" *Id.* at 433–34, 103 S.Ct. at 1939 (citing Senate Report No. 94–1011 p. 6 (1976)).

The Farrow firm attributes 10,255.37 [2] hours of its time to the case. The Boccardo firm attributes 833.2 hours of trial and trial preparation time to the case. The total amount sought by the two firms together is $1,774,465.28, inclusive of $187,-251.83 in costs and a $136,006.55 adjustment for delay.

The Farrow firm has not met its burden of providing sufficiently detailed information regarding the reasonable number of hours. A significant number of the time slips submitted to the court merely attribute time to work for Pacific West without describing how that time was spent or whether the work related to the litigation. There are blank time slips, time slips that offer no reference to the subject matter of conferences and phone calls, as well as time slips detailing matters that are unrelated to the litigation such as publicity, fee arrangements, and partnership agreements. The prevailing party may only charge his adversary for the time and expenses attributable to the litigation.

The Supreme Court in *Hensley* discussed overstaffing of cases and consideration of the skill and experience of different attorneys. It discussed the ethical obligation of an attorney to "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary...." 461 U.S. at 434, 103 S.Ct. at 1939–40. Mr. Farrow purports to have done just this, yet he was able to eliminate only $17,168.75 from a $1,440,655.15 initial fee request.[3] Nowhere in the Farrow

---

**2.** The number of hours claimed initially was 10,049.67, to which was added the 205.7 hours claimed to have been spent on post-trial motions.

**3.** This sum includes the $209,050 sought by the

firm's papers is the issue of overstaffing adequately addressed in order to explain, for example, why it took three attorneys to try plaintiff's case.

For these reasons, the court rejected the proposed lodestar amount and assumed the burden of determining an appropriate lodestar figure. The court has had to carefully review each of the time slips submitted in order to determine a reasonable number of hours attributable to the litigation. The following catalogs those hours which the court has concluded are not reasonably claimed, or are inadequately documented.[4]

| | |
|---|---|
| Blank time slips: | 769.8 hours |
| Letters, conferences and telephone calls without description: | 676.47 hours |
| Matters unrelated to litigation, e.g., drafting partnership agreement: | 416.9 hours |
| Total Time: | 1863.17 hours |

Defendants request that the fees awarded be no more than 40 percent of the fees claimed, namely, $698,697.91. They cite *Greater Los Angeles Council on Deafness v. Community Television of So. Cal.*, 813 F.2d 217 (9th Cir.1987), to support their request. However, defendants' request is arbitrary, given that the lodestar has not been properly calculated in this case. Furthermore, defendants do not adequately explain why 40 percent represents a proper reduction as opposed to some other percentage. In *Greater Los Angeles* the district court had calculated the lodestar and on appeal the Ninth Circuit reduced this amount by 40 percent because three of the issues on which the plaintiff had prevailed at trial were lost on appeal. The Ninth Circuit decreased the degree of the plaintiff's success and therefore decreased the fee award accordingly to reflect that limited success.

Boccardo firm. The $17,168.75 reduction was made from this sum by Mr. Farrow, although the court here reflected it as a reduction in the Farrow firm's fee, *see* p. 6 n. 1, because Mr. Farrow did not indicate how the $17,168.75 was to be apportioned. This sum does not include the $27,720.50 later added for post-trial motions.

### D. *Kerr Factors Applied*

■ This case presented a novel question of law regarding the first amendment rights of cable television in a complex factual setting. The case arose out of plaintiff's unsuccessful attempt to enter the cable television market in Sacramento. The legal questions revolved around the central issue whether or not cable television was a "natural monopoly." Nonetheless, in spite of the novelty of the legal question, the case is one of at least three pending cases brought by plaintiff's counsel which raise identical issues in similar factual contexts. Consequently, much of the legal research performed for those other cases also benefited the instant case.

■ Defendants contend that the judgment in this case was only a partial victory for plaintiff because it obtained nothing of the $155,000,000 sought in damages. They argue that zero recovery indicates "limited success"; however, there is no basis for the contention that a limited damage award mandates reduction of the lodestar. The Court in *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986), cited by defendants, did state that the amount of damages recovered was *a factor* to consider in adjusting the lodestar amount, but it in no sense mandated reduction. In fact, the Court cautioned that the attorney's fee award was not to be made proportional to the amount of monetary damages recovered because such awards "do not reflect fully the public benefit advanced by civil rights litigation...." 106 S.Ct. at 2695. While plaintiff may not have received all the relief it sought, the judgment nonetheless represents a significant vindication of plaintiff's rights, particularly in light of the jury findings that cable television is not a "natural monopoly." The court will, however, consider the

4. The court also notes that in several instances it was unable to discern the number written on the time slips as the number of hours spent on the particular activity, either because the number was illegible or because it was copied off the page.

damages recovered in determining the proper award.

Plaintiff has been represented by the Farrow firm throughout the course of the litigation. Although the firm is a small one and the instant litigation was complex, it was able to perform work on the other cable cases it is handling in California and was also able to perform work for clients in the Northern California area. The Farrow firm itself admits that the extent to which the litigation precluded other employment was limited. Despite their contention that the position taken in this case is unpopular in the cable industry, it is at worst a mixed blessing. Perhaps any loss of clients from cable companies who hold virtual monopoly positions may be offset by companies seeking representation in order to obtain entry into other cable markets.

Consideration of the remaining *Kerr* factors is included in the determination of the lodestar amount. With regard to one of the factors, awards in similar cases, the court has been presented with no evidence relevant thereto. After careful and thorough review of plaintiff's counsel's time records and consideration of the *Kerr* factors, the court has calculated the appropriate lodestar figure by reconstructing the reasonable number of hours spent and the reasonable hourly charge, as follows:

### NUMBER OF HOURS

|  | 1983 | 1984 | 1985 | 1986 | 1987 | TOTAL |
|---|---|---|---|---|---|---|
| **Attorneys** |  |  |  |  |  |  |
| HRF | 12.0 | 21.3 | 113.25 | 203.5 | 566.5 | 916.55 |
| RA |  |  |  |  | 707.45 | 707.45 |
| RMB | 438.0 | 532.6 | 560.4 | 490.7 | 359.0 | 2380.70 |
| Other | 128.9 | 228.1 | 831.75 | 924.34 | 1200.2 | 3313.29 |
| **TOTAL** | 578.9 | 782.0 | 1505.4 | 1618.54 | 2833.15 | 7317.99 |
| **Law Clerks** |  |  |  |  |  |  |
| Attorneys** |  |  |  |  |  | 42.5 |
| RM | 75.9 | 2.2 | 292.2 |  | 29.7 | 400.0 |
| DP |  |  | 6.3 |  |  | 6.3 |
| CAL |  |  | 14.2 | 148.4 | 100.5 | 263.1 |
| **TOTAL** | 75.9 | 2.2 | 312.7 | 148.4 | 130.2 | 711.9 |

** Attorneys performed law clerk functions: 42.5 hours

### CALCULATING LODESTAR

|  | No. of Hours | Hourly Rate | Total |
|---|---|---|---|
| HRF | 916.55 | 150 | 137,482.50 |
| RA | 707.45 | 150 | 106,117.50 |
| RMB | 2380.7 | 90 | 214,263.00 |
| Other | 3313.29 | 85 | 281,629.65 |
| Clerks | 711.9 | 40 | 28,476.00 |
| SUBTOTAL | 8029.89 |  | 767,968.65 |
| **Fee Motion**** |  |  |  |
| HRF | 5.5 | 150 | 825.00 |
| RMB | 15.3 | 90 | 1,377.00 |
| Other | 76.4 | 85 | 6,494.00 |
| SUBTOTAL | 97.2 |  | 8,696.00 |
| LODESTAR | 8127.09 |  | 776,664.65 |

** The time spent on other post-trial motions is included in the previous breakdown of hours.

### E. *Downward Adjustment of Lodestar*

◼ The quality of the documentation submitted to the court by plaintiff's counsel, unlike the quality of their representation of plaintiff, can only be described as poor. It was not helpful to the court. The time slips are so general in description that the court was often unable to determine whether the claimed number of hours were "reasonably expended" on the litigation. It was not possible from the descriptions given to pinpoint those hours which represent duplication of effort, although the court does believe that a great deal of duplication has occurred in this case. In only one instance was it actually able to compensate for duplication of effort by reducing the number of hours spent on the trial. It recognizes the significant contribution of Mr. Bramson to the conduct of the trial, but has adjusted for overstaffing by eliminating his trial hours and awarding compensation to the other two attorneys at the higher hourly rate. Accordingly, 444

hours of time has been eliminated from the 803 hours Mr. Bramson logged for 1987.

■ The court is also of the opinion that the number of hours attributed to the instant litigation should be reduced to reflect the shared benefit of research hours for the three simultaneous cases being handled by the Farrow firm. Again, the court was unable to discern from the time slips even an estimated number of research hours that could reasonably have benefited the *Preferred Communications, Inc. v. City of Los Angeles*, 476 U.S. 488, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986), *aff'g*, 754 F.2d 1396 (9th Cir.1985) and *Century Federal v. City of Palo Alto*, 579 F.Supp. 1553 (N.D. Cal.1984), *later proceeding*, 648 F.Supp. 1465 (1986) cases. Rather than choose an arbitrary percentage by which to reduce the lodestar, the court accepts the amount offered by defendants to reflect this overlap.[5] This means a $13,835 reduction in the lodestar.

■ The lodestar should be further reduced to eliminate the antitrust claims upon which plaintiff did not prevail. *See Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940. Those claims were "distinctly different claims for relief that [were] based on different facts and legal theories," *id.*, from plaintiff's first amendment claims. Therefore, the court accepts the amount which the parties agree represents work done on plaintiff's unsuccessful antitrust claims. A further reduction of $20,924 is therefore required. After having made these adjustments, the appropriate lodestar amount, and therefore the proper fee award, should be $741,905.65.

### F. Adjustment for Delay

■ Plaintiff's counsel calculated a $136,006.55 delay factor by multiplying the proposed fees by 10 percent for each year up to 1987. In 1987 a 6.67 percent rate was used to reflect the eight months for which fees were accumulated. The delay factor, if the court chose to apply one, would have to be adjusted to reflect the court's reduction in fees. However, "[a]djustment for inflation is not required in every case...." *Jordan*, 815 F.2d at 1262 n. 7. The court has reviewed the law on this issue and has determined that application of a delay factor is inappropriate in the instant case.

The litigation in this case has not been protracted, as was the litigation in *Chalmers v. City of Los Angeles*, 676 F.Supp. 1515 (C.D.Cal.1987) (on remand), which lasted for approximately 10 years. In addition, the court in *Chalmers* calculated the lodestar based on historical hourly rates, a factor which contributed to the court's finding a delay factor appropriate. By contrast, the hourly rates in the instant case are flat rates for all four-and-a-half years and can be viewed as current rates. Therefore, even if an adjustment for delay were warranted in this case, use of current rates would adequately compensate for inflation. *See Chalmers*, 676 F.Supp. at 1526.

### G. Costs

■ The district court has the discretionary authority to award costs to a prevailing litigant pursuant to Federal Rule of Civil Procedure 54(d), which provides in relevant part:

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs....

Fed.R.Civ.P. 54(d). *See also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 479 U.S. 1080, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987); *United California Bank v. THC Financial Corp.*, 557 F.2d 1351, 1361 (9th Cir.1977). The Supreme Court does not read this Rule "as giving district judges unrestrained discretion to tax costs to reim-

---

5. Plaintiff contests this amount on the ground that the time was either already reduced by the attorney who prepared the time sheet, or reduced by the Farrow firm's bookkeeper, or reduced by Mr. Farrow as part of his billing discretion. However, since these methods were not fully reflected on the time slips which the court has had to rely on, it cannot accept plaintiff's $3,692.50 as a proper amount. While the court agrees with plaintiff that $13,835 may not be an accurate amount, it feels that any inaccuracy operates in plaintiff's favor.

burse a winning litigant for every expense he has seen fit to incur in the conduct of his case." *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964). Furthermore, the Court expressly cautioned that "[i]tems proposed by winning parties as costs should always be given careful scrutiny." *Id.*

The kinds of expenses which may be taxed as costs against a losing party are enumerated in 28 U.S.C. § 1920:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Defendants do not contest plaintiff's counsel's entitlement to recovery of costs, whether or not those costs are properly assessable by statute; however, they do dispute the inclusion of expert witness fees. Plaintiff initially requested $187,251.83 [6] but indicated that $45,313.47 represents taxable costs for which it has submitted a Bill of Costs to the court clerk.[7] Therefore, plaintiff stipulated at the hearing on its motion for fees and costs that the costs requested should be reduced by that amount. The initial amount requested, $187,251.83, less that sum, leaves $141,938.36 as plaintiff's nontaxable costs, the bulk of which is expert witness and consulting fees. The amount of expert witness and consulting fees is $124,764.46, and the amount of other expenses is $17,173.90, which the Farrow firm claims represents expenses normally billed to their clients.

The Ninth Circuit has stated that out-of-pocket expenses, although not normally taxable as costs, may be recovered as part of an attorney's fee award under section 1988 if they represent costs normally charged to the client. *Chalmers*, 796 F.2d at 1216 n. 7 (citing *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C.Cir. 1984), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985)).[8] Plaintiff appears to have interpreted this as a blanket provision for all out-of-pocket expenses, including expert witness and consulting fees. However, the court in *Chalmers* was referring only to the cost of transportation from outside the 100–mile limit set under Federal Rule of Civil Procedure 45(e) for compelling the attendance of witnesses.

The question of whether expert witness fees may be awarded to a prevailing party under section 1988 is one which neither the Supreme Court nor the Ninth Circuit has had the opportunity to specifically address. However, allowance of expert witness fees under section 1988 is called into question by the recent Supreme Court decision in *Crawford*, which disallowed expert witness fees on the ground that "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." 107 S.Ct. at 2499. While this court is cognizant of the fact that the particular costs issue now before it did not arise in *Crawford*, it nonetheless

---

**6.** Mr. Farrow states that the original amount of costs was $189,187.17, from which he deducted $1,935.34 of costs primarily for meals and entertainment before making the above request.

**7.** Presumably plaintiff anticipates that the amount requested in its Bill of Costs is consistent with 28 U.S.C. § 1920 and Local Rule 292, which repeats the enumeration of section 1920, adds other items allowed under other statutes and federal rules, and includes a catch-all provision. That issue will not be considered here.

**8.** In light of this authority and the fact that defendants have not objected to these miscellaneous costs, the court declines to pass on the issue whether these costs are properly recoverable and will award them to plaintiff.

feels that the opinion casts doubt on the issue because the Ninth Circuit does not appear to find any authority under section 1988 for recovery of these types of costs and has looked to Rule 54(d) instead.

*Crawford* involved two consolidated cases, both from the Fifth Circuit; one was an antitrust case and the other was a race discrimination case brought under Title VII and section 1981.[9] The district courts had come out differently in each case on the issue of recovery for excess expert witness fees. The district court in the race discrimination case denied attorney's fees and referred the question of costs to a magistrate, whose cost award included expert witness fees above the statutory limit. The district court thereafter disallowed recovery of the excess amount. In contrast, the district court in the antitrust case determined that Rule 54(d) conferred on it the discretion to award excess expert witness fees. In both cases the Fifth Circuit *en banc* ruled that the limits set under 28 U.S.C. § 1821[10] controlled and the Supreme Court affirmed, refusing to read Rule 54(d) as "a separate source of power to tax as costs expenses not enumerated in § 1920." 107 S.Ct. at 2497.

Since *Crawford* did not involve a statute which specifically allows recovery of expert witness fees,[11] or any of the fee-shifting statutes, that case does not fashion a set rule that excess expert witness fees cannot be recovered under section 1988. However, the Supreme Court did note the following in passing:

Although Congress responded to our decision in *Alyeska* by broadening the availability of attorney's fees in the fed-

eral courts, see The Civil Rights Attorney's Fees Award Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988, it has not otherwise "retracted, repealed, or modified the limitations on taxable fees contained in the 1853 statute and its successors."

107 S.Ct. at 2499 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 260, 95 S.Ct. 1612, 1623, 44 L.Ed.2d 141 (1975)). Although implicit in that statement is the conclusion that excess expert witness fees are not covered by section 1988, which was aimed at attorney's fees only, Justice Blackmun's separate concurrence rested "upon the understanding that [the Court did] not reach the question whether, under 42 U.S.C. § 1988, a district court may award fees for an expert witness." *Id.* (also noted by Justices Marshall and Brennan in dissent, 107 S.Ct. at 2500 n. 1).

This court declines to pass upon this issue of first impression in this circuit since it does not believe that excess expert witness fees are justified in this case, even if the standard applied in this circuit in other types of civil rights cases survives the *Crawford* decision. *See United States v. City of Twin Falls, Idaho,* 806 F.2d 862 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987); *Thornberry v. Delta Air Lines, Inc.,* 676 F.2d 1240, 1245 (9th Cir.1982), *vacated on other grounds,* 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1983). However, before elaborating on its reasons therefor, the court offers its explanation of why it believes that *Crawford's* likely application in the section 1988 context would be to disallow excess expert witness fees. This

---

**9.** Those cases were *J.T. Gibbons, Inc. v. Crawford Fitting Co.,* 790 F.2d 1193 (5th Cir.1986), and *International Woodworkers of America v. Champion International Corp.,* 790 F.2d 1174 (5th Cir.1986).

**10.** The witness fee provided for in section 1920(3) is defined in 28 U.S.C. § 1821:

(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States ... shall be paid the fees and allowances provided by this section.

. . . .

(b) A witness shall be paid an attendance fee of $30 per day for each day's attendance. A

witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

**11.** One court has noted that there are at least twenty-eight such statutes which provide for taxing expert witness fees although under varying standards. *International Woodworkers of America, AFL–CIO and its Local No. 5–376 v. Champion International Corp.,* 790 F.2d 1174, 1179–80 n. 7 (5th Cir.1986), *aff'd sub nom., Crawford,* 479 U.S. 1080, 107 S.Ct. 2494, 96 L.Ed.2d 385.

determination is based upon Ninth Circuit dicta in *Thornberry* and a Sixth Circuit case cited in connection therewith, *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980), which, after specifically addressing the issue, found authority for awarding excess expert witness fees not under section 1988 but within the discretionary authority of Rule 54(d), now restricted by *Crawford*.[12]

The following statements made by the Ninth Circuit in *Thornberry*[13] regarding excess expert witness fees indicate that it is in accord with the Sixth Circuit's view:

> Those costs which are not considered a part of attorney's fees, and those not within the ambit of the "liberal construction" rule which governs the application of § 1988, require a different analysis. *See Northcross, supra*, 611 F.2d at 639–40. Unlike attorney's fees, taxation of these costs, which include consulting and expert witness fees, lies within the trial court's discretion. *Id.* at 640. The exercise of that discretion may not be unlimited, however. We note that *Chapman v. Telephone & Telegraph Co.*, 456 F.Supp. 77, 83–84 (N.D.Cal.1978), contains language suggesting that these elements of cost may only go beyond the statutory "limits" (subsistence and transportation) in the presence of special circumstances. *See* F.R.Civ.P. Rule 54(d); 28 U.S.C. §§ 1821, 1920.

676 F.2d at 1245 (additional citation omitted). The court then went on to hold that these costs could be recovered if the party seeking their recovery could show "special circumstances," which were to be determined by the district judge on the basis of the "practical litigation needs of the party." *Id.*

The Ninth Circuit later clarified the standard for awarding enhanced expert witness fees in *Twin Falls*, 806 F.2d 862. The court there "[held] that district courts have the discretion to award additional expert witness fees upon a finding on the record that the expert testimony was crucial or indispensable in establishing the prevailing party's case or defense." *Id.* at 878 (citation omitted). The court found the source of that discretion, as did *Thornberry*, within Rule 54(d). Therefore, although *Crawford* directed itself to costs, separate from consideration of any fee award, the Ninth Circuit's analysis of excess expert witness fees is called into question because it analyzes those costs differently from fees, even when it is presented with a request for fees and costs. If excess costs are not explicitly provided for in the statute allowing recovery of attorney's fees, the Ninth Circuit then looks to Rule 54(d). This type of analysis is now discredited by *Crawford*. Therefore, unless the Ninth Circuit, when squarely presented with the issue, finds the authority for recovery of these costs within section 1988, it appears that those excess costs are not now recoverable.

Nevertheless, this court does not rest its decision upon that ground. Even if *Crawford* does not displace the district court's discretion to award enhanced expert witness fees as part of a section 1988 fee award and the Ninth Circuit's standard still applies, this court has determined that there are no exceptional circumstances present in this case which call for the exercise of its discretionary authority. The fact that the plaintiff prevailed on the licensing aspect of the case does not alone justify a special award of excess expert witness fees, particularly in view of the substantial fee award being made.

Although the complexity of the factual issues in this case did justify expert witness testimony, the court does not believe

---

**12.** Moreover, the court notes, as did the Eleventh Circuit in *Glenn v. General Motors Corp.*, 841 F.2d 1567 (11th Cir.1988) (considering *inter alia* the application of *Crawford* to a fee and cost award under the Equal Pay Act, 29 U.S.C. § 216(b)), that the majority of courts that have considered the issue under "Section 1988 or other civil rights fee-shifting provisions [since

*Crawford*] have not permitted awards for expert witness fees." *Id.* at 1575 n. 23. *See also* cases cited therein.

**13.** *Thornberry* was an appeal of an award of attorney's fees and costs to a prevailing plaintiff under Title VII.

that plaintiff's counsel is entitled to recover the costs of employing expert witnesses and consultants beyond the statutory limits set by section 1821. The Farrow firm contends that those costs are reasonable in light of plaintiff's "unparalleled success at trial." It is undeniable that plaintiff's experts were instrumental in demonstrating to the jury that cable television is not a "natural monopoly"; however, the testimony at trial was directed in large measure to the issue of damages, upon which plaintiff achieved no success. While that does not vitiate the finding that plaintiff was the prevailing party, since it prevailed on the licensing issue, it was nonetheless unsuccessful on a substantial part of its case. Accordingly, the court denies recovery of excess expert witness and consulting fees for the reasons set forth above.

By reason of the foregoing, IT IS ORDERED that defendants City of Sacramento and County of Sacramento pay attorney's fees and costs in the aggregate amount of $759,079.55 of which $741,905.65 represents attorney's fees and $17,173.90 represents those nontaxable costs not objected to by defendants.[14]

---

**14.** This order does not include the $45,313.47 submitted to the court clerk in plaintiff's Bill of Costs, which is assessed in addition to the $759,079.55.